# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH


## NO. 2-05-143-CV

IN THE MATTER OF
THE GUARDIANSHIP OF
KATHRYN HOUSEWORTH GIBBS,
AS AN INCAPACITATED PERSON

------------

FROM PROBATE COURT OF DENTON COUNTY

------------

## OPINION ON REHEARING

------------

We withdraw our opinion of October 5, 2006 and substitute the following. We deny Appellee's Motion for Rehearing.

### I. Introduction

Howard Kirk Gibbs, Candace Gibbs Watson, and Kenneth Vernon Gibbs (collectively, appellants) appeal from an adverse judgment for Kip H. Gibbs, as Next Friend for Kathryn Houseworth Gibbs and Co-Guardian of the Estate of Kathryn Houseworth Gibbs. In ten issues, appellants contend that (1) the trial

court, which is a statutory probate court, lacked subject matter jurisdiction over Kip's claims, (2) the trial court committed harmful error by failing to timely file findings of fact and conclusions of law, (3)-(4) the trial court erred in holding appellants liable for tax penalties because that claim was never pleaded, (5)-(8) the evidence is legally and factually insufficient to support Kip's claims for breach of fiduciary duty and restitution and to support the damages awards for those claims, (9) the trial court erred by removing appellants as trust beneficiaries, and (10) the court's award of attorney's fees is improper because it lacks a statutory or contractual basis. We reverse the trial court's judgment and render judgment dismissing the case.

## II. Background Facts and Procedural History

The Mary L. Houseworth Revocable Trust (Houseworth Trust) was established by Mary L. Houseworth on July 17, 1990. The Houseworth Trust provided for monthly distributions to Mary's daughter, Kathryn Houseworth Gibbs. Upon Kathryn's death, Kathryn's four children, the appellants and appellee herein, were to be the final trust beneficiaries. Mary Houseworth died in 1991, her will was probated, and the revocable trust became irrevocable.

The Kathryn Houseworth Gibbs Irrevocable Trust (Gibbs Trust) was also established in 1990. The beneficiaries of the Gibbs Trust were Mary Houseworth, Kathryn Gibbs, and Kathryn's four children. The Gibbs Trust

2

provided for distributions to any of the beneficiaries for health emergencies and provided for coordination of maintenance distributions to Kathryn for her living expenses. As with the Houseworth Trust, Kathryn's children were the ultimate trust beneficiaries.

The Gibbs Trust also provided that, if Kathryn and any three of her four children agreed in writing, additional trust funds could be removed from the Trust for Kathryn's benefit. In 1998, allegedly fearing the circumstances surrounding the impending Y2K scare, Kathryn and three of her four children—appellants—signed written authorizations to withdraw $1,015,000 from the Gibbs Trust. Appellants used approximately $701,000 of the money to purchase gold coins. They also purchased food and other items in preparation for Y2K.

Kip Gibbs was not consulted regarding the funds withdrawal. Consequently, in September 2000, Kip filed suit as next friend of Kathryn against appellants in Denton County Probate Court. In the suit, Kip asserted claims against appellants for restitution/money had and received and breach of fiduciary duties related to removal of the trust funds. Kip asked that a constructive trust be declared over all of Kathryn's property and assets under appellants' control; asked the trial court to "terminat[e] . . . any right, power, or authority by any of the [appellants] over the Trust assets or the interference

3

with the duly appointed and acting Trustee"; and sought punitive damages and attorney's fees.

Thereafter, on May 7, 2001, Kip and his wife Sandra filed an application for a temporary guardianship over Kathryn's estate. That same day, the probate court issued an order approving the guardianship. On May 15, 2001, the trial court entered an order extending the temporary guardianship until July 6, 2001.[1] On July 6, the court entered an order purporting to extend the temporary guardianship until August 3, 2001.

Meanwhile, on June 29, 2001, Kip filed an application to convert the temporary guardianship of Kathryn's estate to a permanent guardianship. Appellants never contested the application for a temporary guardianship; however, on July 13, 2001, they contested the application for conversion of the temporary guardianship into a permanent one.

On October 5, 2001, the trial court again issued an order purporting to extend the temporary guardianship of Kathryn's estate "until further order of

---

[1] The version of probate code section 875(f)(2) in effect in 2001 provided that the ward or her attorney could consent for the order appointing the temporary guardian to be extended up to 60 days after the date the application for temporary guardianship was filed. Act of May 30, 1993, 73rd Leg., R.S., ch. 957, § 1, sec. 875(f)(2), 1993 Tex. Gen. Laws 4081, 4152 (amended 2003) (current version at TEX. PROB. CODE ANN. § 875(f)(2) (Vernon Supp. 2007) (providing for only a 30-day extension by consent)).

4

this court."  Also in the October 5 order, the trial court "transferred as an ancillary action to this guardianship action" Kip's restitution and breach of fiduciary duty claims against appellants.  On April 27, 2004, the trial court entered an order purporting to convert the temporary guardianship over Kathryn's estate into a permanent guardianship.

On September 13, 2004, the trial court called the underlying suit to trial, but appellants did not attend.  The trial court rendered a final judgment against appellants on Kip's restitution and breach of fiduciary duty claims and awarded Kip a total of $1,060,799.21 in actual and punitive damages and prejudgment interest.  The trial court also modified the trusts to remove appellants as trust beneficiaries.

### III.  The Statutory Probate Court's Jurisdiction

In their first issue, appellants assert that the trial court, a statutory probate court, had no subject matter jurisdiction over Kip's claims against them for restitution and breach of fiduciary duty.  Appellants contend that the district court had exclusive jurisdiction over these claims and that the guardianship provided no basis for the trial court's jurisdiction because it expired by operation of law on July 6, 2001.  Kip contends that the trial court had subject matter jurisdiction over his restitution and breach of fiduciary duty claims by virtue of

5

former probate code sections 5(d) and 5A(c)– (d) and section 115.001(d) of the

Texas Trust Code.

## A. Probate and Trust Codes

A statutory probate court may exercise only that jurisdiction accorded it

by statute.[2]  Former section 5(e) provides that "[a] statutory probate court has

concurrent jurisdiction with the district court . . . in all actions involving an inter

vivos trust . . . and in all actions involving a testamentary trust."[3]  Likewise,

---

[2] *Mobil Oil Corp. v. Shores,* 128 S.W.3d 718, 723 (Tex. App.—Fort Worth 2004, no pet.).

[3] Act of May 19, 1989, 71st Leg., R.S., ch. 1035, § 2, 1989 Tex. Gen. Laws 4162, 4163 (amended 2001, 2003, 2005) (current version at TEX. PROB. CODE ANN. § 5(e) (Vernon Supp. 2007)).  The enabling legislation provides that the 2001 through 2005 amendments apply only to proceedings commenced on or after the effective dates of the amendments.  Act of May 23, 2005, 79th Leg., R.S., ch. 551, § 9, 2005 Tex. Gen. Laws 1476, 1480; Act of May 28, 2003, 78th Leg., R.S., ch. 1060, §17(a), 2003 Tex. Gen. Laws 3052, 3057; Act of May 1, 2001, 77th Leg., R.S., ch. 63, § 3, 2001 Tex. Gen. Laws 104, 106.  The underlying suit was filed in September 2000; thus, we apply former section 5(d) to this case.

Kip also relies on a local rule of the Denton County Probate Court, which tracks former sections 5(d) and 5A(c) and provides that "[t]he Probate Court of Denton County, Texas hears:  . . . concurrently with the district court, . . . all actions involving an inter vivos trust . . . and . . . all actions involving a testamentary trust[.]"  DENTON COUNTY (TEX.) PROBATE COURT LOC. R. 1.2(d). Because the probate court's jurisdiction is purely statutory, *Mobil Oil Corp.,* 128 S.W.3d at 723, it cannot confer jurisdiction on itself by local rule beyond what the legislature has conferred by statute.  *Cf. In re Stark,* 126 S.W.3d 635, 639 (Tex. App.—Beaumont 2004, orig. proceeding) (stating that local rules cannot allow the transfer of cases from one court to another unless the cases are

former section 5A(c) provides that "[a] statutory probate court has concurrent jurisdiction with the district court in all actions . . . (2) involving an inter vivos trust; . . . and (4) involving a testamentary trust."[4] Former section 5A(d) provides that "[a] statutory probate court may exercise the pendent and ancillary jurisdiction necessary to promote judicial efficiency and economy."[5]

Because a statutory probate court's jurisdiction over actions involving trusts is concurrent with that of the district court,[6] the district court's jurisdiction over actions involving trusts determines the extent of a statutory probate court's jurisdiction over such actions.[7] Section 115.001(a) of the trust code provides that a district court has original and exclusive jurisdiction — except for jurisdiction conferred by law on a statutory probate court[8] — over all proceedings "concerning trusts," including proceedings to:

(1) construe a trust instrument;

---

within the jurisdiction of the court to which the cases are transferred).

[4] Act of May 19, 1989, 71st Leg., R.S., ch. 1035, § 3, 1989 Tex. Gen. Laws 4162, 4164, *repealed by* Act of May 28, 2003, 78th Leg., R.S., ch. 1060, § 16, 2003 Tex. Gen. Laws 3052, 3057.

[5] *Id.*

[6] *See id.*

[7] *Mobil Oil Corp.,* 128 S.W.3d at 724.

[8] TEX. PROP. CODE ANN. § 115.001(d) (Vernon Supp. 2006).

(2)  determine the law applicable to a trust instrument;

(3)  appoint or remove a trustee;

(4)  determine the powers, responsibilities, duties, and liability of a trustee;

(5)  ascertain beneficiaries;

(6)  make determinations of fact affecting the administration, distribution, or duration of a trust;

(7)  determine a question of fact arising in the administration or distribution of a trust;

(8)  relieve a trustee from any or all of the duties, limitations, and restrictions otherwise existing under the terms of the trust instrument or of this subtitle;

(9)  require an accounting by a trustee, review trustee fees, and settle interim or final accounts; and

(10) surcharge a trustee.[9]

Texas courts construing section 115.001(a) and its predecessor, Texas Trust Act article 7425b-24A, have consistently held that these statutes provide the exclusive list of actions "concerning trusts" over which a district court has jurisdiction.[10]

---

[9] *Id.* § 115.001(a).

[10] *Mobil Oil Corp.,* 128 S.W.3d at 724 & n.23 and cases cited therein; *In re NationsBank, N.A.,* No. 01-98-00582-CV, 1999 WL 213100, at *3-5 (Tex. App.—Houston [1st Dist.] April 14, 1999, orig. proceeding) (not designated for publication) and cases cited therein.

The goal of statutory construction is to give effect to legislative intent.[11] Unless a statute is ambiguous,[12] we discern that intent from the language of the statute itself.[13] A statutory provision will not be construed to lead to an absurd result if the provision is subject to another more reasonable interpretation.[14] Further, we consider the provisions of a statute as a whole and not in isolation.[15]

Kip's causes of action against appellants for restitution and breach of fiduciary duty are not enumerated in section 115.001(a), nor do they fall within its scope. Kip has asserted fraud-type claims against appellants, alleging that Kathryn was "extremely gullible," "incapable of protecting her own interests," and was "browbeaten," "cajoled," and "terrorized" by appellants into signing

---

[11] *Continental Cas. Co. v. Downs,* 81 S.W.3d 803, 805 (Tex. 2002); *Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex. 2000).

[12] The parties do not assert that any of the statutes in this case are ambiguous.

[13] *Downs,* 81 S.W.3d at 805; *see* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."); *id.* § 312.002(a) (providing that words shall be given their ordinary meaning).

[14] *C & H Nationwide, Inc. v. Thompson,* 903 S.W.2d 315, 322 n.5 (Tex. 1994), *abrogated on other grounds, Battaglia v. Alexander,* 177 S.W.3d 893 (Tex. 2005); *Sharp v. House of Lloyd, Inc.,* 815 S.W.2d 245, 249 (Tex. 1991).

[15] *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex. 2001).

a blanket authorization for withdrawal of trust funds, which appellants wrongfully used to take control of the trust property for their own purposes. None of the categories listed in section 115.001(a) encompasses these types of claims. "All of [the actions enumerated in section 115.001(a)] involve actions relating to the trust itself or the operation thereof. None involves anything remotely resembling a tort action."[16] Further, nothing in the plain language of section 115.001(a) authorizes the trial court to modify the trust documents, as Kip requested, to terminate appellants' rights as beneficiaries to the trust assets.

Notwithstanding the statutory limitations on the trial court's jurisdiction, Kip contends that the trial court had concurrent jurisdiction with the district court over his claims because they "relat[ed] to" the Houseworth and Gibbs Trusts. We decline to read the statutes so broadly.[17] The mere fact that trust funds are implicated by a claim does not transform the claim into one "concerning" or "involving" trusts.[18] Under Kip's theory, every lawsuit touching

---

[16] *Stark,* 126 S.W.3d at 642.

[17] *See Sorokolit v. Rhodes,* 889 S.W.2d 239, 241 (Tex. 1994) (stating that we may not enlarge the meaning of any word in a statute beyond its ordinary meaning).

[18] *See, e.g., Retzlaff v. Deshay,* No. 14-03-00833-CV, 2004 WL 2163173, at *5 (Tex. App.—Houston [14th Dist.] Sept. 28, 2004, no pet.) (mem. op.) (holding that a claim for breach of fiduciary duty against a trustee

10

on trust funds, however slightly or tangentially, would come within the subject matter jurisdiction of the statutory probate courts, regardless of the subject matter.  Indeed, construing section 115.001(a) as Kip suggests would render meaningless the carefully drafted categories enumerated in the statute.[19]  We may not construe a statute to lead to an absurd result if it is subject to another more reasonable interpretation.[20]  Moreover, we may not construe a statute in any manner that fails to give effect to all the provisions the legislature enacted or that reduces any provision to mere surplusage.[21]

---

did not concern a trust within the meaning of section 115.001(a)); *Mobil Oil Corp.,* 128 S.W.3d at 724-25 (holding that the mere fact that the plaintiff was a trustee did not transform the suit into one "concerning trusts" under section 115.001(a)); *Stark,* 126 S.W.3d at 642 (holding that claims for fraud, conspiracy, and breach of fiduciary duty were not claims "concerning trusts" within the meaning of section 115.001(a) or claims "involving trusts" within the meaning of former probate code section 5A(c)); *NationsBank,* 1999 WL 213100, at *4 (holding proceedings "concerning trusts" under section 115.001(a) did not include claims for negligent misrepresentation, breach of fiduciary duty, or other torts allegedly committed by the trustee); *Mayflower Trust Co. v. Nowell,* 413 S.W.2d 783, 786 (Tex. Civ. App.—Houston 1967, writ dism'd) (holding that former article 7425b-24A, the predecessor to section 115.001(a), did not cover a suit by trust beneficiaries against the trustee and others alleging conversion of trust assets, fraud, and other torts).

[19] *See Mobil Oil Corp.,* 128 S.W.3d at 725; *NationsBank,* 1999 WL 213100, at *4 n.10 (both holding same).

[20] *C & H Nationwide, Inc.,* 903 S.W.2d at 322 n.5.

[21] *Mobil Oil Corp.,* 128 S.W.3d at 725; *see State ex rel. State Dep't of Highways and Pub. Transp. v. Gonzalez,* 82 S.W.3d 322, 327 (Tex. 2002) (stating that courts read a statute as a whole and interpret it to give effect to

For these reasons, we hold that Kip's claims for restitution and breach of

fiduciary duty do not "involve" or "concern" trusts as those terms are used in

the statutes and, therefore, are not within the statutory probate court's limited

statutory jurisdiction. Accordingly, Kip cannot rely on former probate code

sections 5(d) and 5A(c)–(d) or trust code section 115.001 as a basis for the

trial court's subject matter jurisdiction in this case.

## B. Temporary Guardianship

Next, we consider whether the temporary guardianship provided a basis

for the trial court's subject matter jurisdiction over Kip's claims under then

probate code sections 607(d), 608 and 5A(d).

Former Probate Code section 607(d) provides that "[a] statutory probate

court may exercise the pendent and ancillary jurisdiction necessary to promote

judicial efficiency and economy."[22] Former section 608 provides,

> A judge of a statutory probate court, on the motion of a party to
> the action or of a person interested in a guardianship, may transfer
> to the judge's court from a district, county, or statutory court a
> cause of action appertaining to or incident to a guardianship estate

---

every part); *Helena Chem. Co.,* 47 S.W.3d at 493 (stating that courts must not
consider statutory provisions in isolation or give one provision a meaning out of
harmony or inconsistent with other provisions).

[22] Act of September 1, 1993, 73rd Leg., R.S., ch 957, §1, 1993 Tex.
Gen. Laws 4081, 4084, *repealed by* Act of September 1, 2003, 78th Leg., R.S.,
ch 549, §33, 2003 Tex. Gen. Laws 1858, 1870.

that is pending in the statutory probate court or a cause of action in which a personal representative of an estate pending in the statutory probate court is a party and may consolidate the transferred cause of action with the other proceedings in the statutory probate court relating to the guardianship estate.[23]

Kip contends that the guardianship estate created by the trial court's May 7, 2001 order approving the temporary guardian was pending in the trial court at the time of the trial court's October 5, 2001 transfer order, and, therefore, that the trial court had the authority under section 608 to transfer and consolidate Kip's claims with this pending guardianship estate. We disagree.

Probate code section 875(h) provides that a temporary guardianship expires by operation of law sixty days after the guardianship is commenced, unless it is contested within the sixty-day period.[24] In this case, the sixtieth day after the trial court issued the May 7, 2001 order approving the temporary guardianship was July 6, 2001. Appellants did not contest the application for

---

[23] Act of September 1, 1999, 76th Leg., R.S., ch 1431, §2, 1999 Tex. Gen. Laws 4876 (amended 2003) (current version at TEX. PROB. CODE ANN. § 608 (Vernon Supp. 2007)).

[24] TEX. PROB. CODE ANN. § 875(h) (Vernon Supp. 2007) ("Except as provided by Subsection (k) of this section, a temporary guardianship may not remain in effect for more than 60 days."); *see In re Guardianship of Soberanes,* 100 S.W.3d 405, 407 (Tex. App.—San Antonio 2002, no pet.) (stating that a temporary guardianship may not remain in effect for more than sixty days unless it is contested during that time period).

temporary guardianship. Therefore, the temporary guardianship expired by operation of law on July 6, 2001.[25]

Because the guardianship had expired before the trial court's attempted transfer of Kip's claims, there was no estate pending that would trigger the trial court's transfer power under the probate code.[26] The trial court, therefore, had no authority to transfer the claims by its October 5, 2001 order. The only actions the trial court was authorized to take were those necessary to close the guardianship and discharge the temporary guardian.[27]

Kip contends, however, that his September 2000 lawsuit against appellants was a contest for purposes of section 875(h) and (k) that gave the trial court statutory authority to extend the temporary guardianship beyond the sixtieth day.[28] We disagree. The contest referenced in this section refers to a

---

[25] TEX. PROB. CODE ANN. § 875(h); *In re Guardianship of Soberanes,* 100 S.W.3d at 407.

[26] *In re John G. Kenedy Mem'l Found.*, 159 S.W.3d 133, 145–46 (Tex. App.– Corpus Christi 2004, orig. proceeding).

[27] TEX. PROB. CODE ANN. §§ 878–79 (Vernon 2003). These actions included reviewing the temporary guardian's final accounting; "immediately" ordering the temporary guardian to deliver the estate remaining in the temporary guardian's possession to the person legally entitled to possession of it; and discharging the temporary guardian upon proof that the guardian had delivered the estate property as required by the statute. *Id.*

[28] *See* Act of Sept. 1, 1995, 74th Leg., R.S., ch 1039, 1995 Tex. Gen. Laws 5168 (amended 2003)(current version at TEX. PROB. CODE ANN. §

14

challenge to the temporary guardianship itself, not to a lawsuit filed by the temporary guardian against third parties.[29] Kip's September 2000 lawsuit—which predated the temporary guardianship by eight months—did not contest the temporary guardianship. Consequently, the trial court was not statutorily authorized to further extend the temporary guardianship by its October 5, 2001 order.[30]

Kip also argues that appellants have admitted that they contested the temporary guardianship before July 6, 2001, because they filed a lis pendens stating that they had contested the temporary guardianship on May 15, 2001. The lis pendens states, however, that *Kathryn* commenced a lawsuit in the temporary guardianship proceeding against "Kenneth Vernon Gibbs, and others"[31] on May 15, 2001, the purpose of which was to "protest the

---

875(k)(Vernon Supp. 2007)) (providing that if temporary guardianship is contested, trial court may appoint new temporary guardian); *In re Guardianship of Sobranes*, 100 S.W.3d at 407 (holding that temporary guardianship may remain in effect more than sixty days, if contested).

[29] *See* Act of September 1, 1995, 74th Leg., R.S., ch 1039, §64, 1995 Tex. Gen. Laws 5168 (amended 2003)(current version at TEX. PROB. CODE ANN. § 875(k)(Vernon Supp. 2007)).

[30] Once a temporary guardianship expires by operation of law, "a judicial decree is not available to continue the administration, or to direct the administrator to further act." *Hurley v. White*, 66 S.W.2d 393, 395 (Tex. Civ. App.–Dallas 1933, no writ).

[31] Kenneth Gibbs is one of the appellants.

appointment of unqualified permanent guardians of the Ward, Kathryn Houseworth Gibbs and protect the estate of said Ward." Nothing in the lis pendens shows that Kathryn or appellants contested the temporary guardianship on May 15, 2001.[32]

Finally, Kip argues that the trial court had the authority to transfer his claims against appellants into the expired guardianship because a statutory probate court does not lose jurisdiction over a temporary guardianship until it is closed and, in closing the guardianship, the court can exercise jurisdiction over claims ancillary to the temporary guardianship such as Kip's claims against appellants. Kip asserts that the expiration of a temporary guardianship under section 875(h) is procedural and does not affect the court's subject matter jurisdiction.

We agree that a statutory probate court does not lose jurisdiction over an expired temporary guardianship until it is closed; however, the court's authority over an uncontested, expired temporary guardianship is limited by statute.[33] As

---

[32] Although a contest to an application to convert a temporary guardianship into a permanent one can preclude the expiration of a temporary guardianship by operation of law, *see* Act of Sept. 1, 1995, 74th Leg., R.S., ch. 1039, §64, 1995 Tex. Gen. Laws 5168 (amended 2003), no such application was pending in May 2001.

[33] *Mobil Oil Corp.,* 128 S.W.3d at 723; *see* TEX. PROB. CODE ANN. §§ 878–79.

we have noted, sections 878 and 879 of the probate code only authorize the court to take those actions necessary to close an uncontested temporary guardianship and discharge the guardian.[34] Such actions do not include transferring other proceedings into the expired temporary guardianship. Indeed, to hold that the court had the authority to transfer Kip's tort claims against appellants into the expired guardianship would result in the temporary guardianship continuing indefinitely—in direct contravention of the legislative intent stated in section 875(h) that an uncontested temporary guardianship may not remain in effect more than sixty days.[35]

---

[34] TEX. PROB. CODE ANN. §§ 878–79.  To the extent that *In re Guardianship of Bayne,* 171 S.W.3d 232, 238 (Tex. App.—Dallas 2005, pet. denied), holds that a trial court may continue a temporary guardianship indefinitely, we believe that *Bayne* is contrary to section 875 and decline to follow it.  *See, e.g.,* TEX. PROB. CODE ANN. § 875(h).

[35] *Id.* § 875(h); *see Nat'l Liability & Fire Ins. Co.,* 15 S.W.3d at 527 (holding that courts construe statutes to give effect to the legislature's intent and presume the legislature intended the plain meaning of its words).

As an aside, we note that a statutory probate court has much broader statutory authority when it is required to *settle* a guardianship estate before closing it.  *See* TEX. PROB. CODE ANN. § 606(e) (Vernon Supp. 2007) (setting forth the extent of a court's authority when a guardianship is required to be settled before closure).  The settlement of a guardianship estate is a much more elaborate process than the mere closure of one.  *See id.* §§ 746, 748–58 (Vernon 2003), § 747 (Vernon Supp. 2007).  An uncontested, expired temporary guardianship is not required to be settled, however, but only closed. *See id.* § 745 (omitting the expiration of an uncontested temporary guardianship by operation of law from the list of circumstances in which a

17

For all of these reasons, we hold that the trial court lacked statutory authority to transfer into the expired temporary guardianship Kip's claims against appellants and that the court's October 5, 2001 order purporting to do so is void.[36] Thus, Kip cannot rely on the temporary guardianship as a basis for the trial court's subject matter jurisdiction in this case.

### C. Application to Convert Temporary Guardianship to Permanent Guardianship

On rehearing, Kip contends, among other arguments, that his Application to Convert the Temporary Guardianship of the Estate to Permanent Guardianship of the Estate meets the statutory requirements of an application for permanent guardianship under section 682 of the probate code,[37] and that, because the application was pending and contested by appellants, the trial court had the authority to appoint a temporary guardian and transfer Kip's

---

guardianship estate must be settled). Kip's reliance on *In re Guardianship of Soberanes* as support for his argument that an uncontested, expired temporary guardianship must be both settled and closed is misplaced. That case involved a contested temporary guardianship, not an uncontested one that had expired by operation of law. 100 S.W.3d at 406-07.

[36] *See DB Entertainment, Inc. v. Windle,* 927 S.W.2d 283, 289 (Tex. App.—Fort Worth 1996, orig. proceeding) (holding that statutory probate court's order transferring a case to itself without statutory authority was void).

[37] Act of Sept. 1, 1999, 76th Leg., R.S., ch. 829, §4, 1999 Tex. Gen. Laws 3461, 3462 (amended 2003) (current version at TEX. PROB. CODE ANN. § 682 (Vernon Supp. 2007)).

claims into the permanent guardianship proceeding. As we have noted, however, there was no guardianship estate pending in the trial court at the time it attempted to transfer Kip's claims. The mere filing of an application for permanent guardianship in the trial court did not create a guardianship estate or cause a guardianship estate to be "pending" for the purpose of the transfer statute.[38]

Nor did the trial court's attempts to extend the expired temporary guardianship while the application for permanent guardianship was pending cause a guardianship estate to be pending for the purpose of the transfer statute. When the temporary guardianship expired without a contest, the trial court had no authority to continue the guardianship, or to direct the guardians

---

[38] *In re John G. Kenedy Mem'l Found.*, 159 S.W.3d at 145-46; *Pratho v. Zapata,* 157 S.W.3d 832, 840 (Tex. App.–Fort Worth 2005, no pet.). Because the probate court must determine that a guardianship is necessary before appointing a guardian, merely instituting proceedings in the probate court by filing an application for guardianship does not guarantee that a guardian will be appointed. If the court declines to appoint a permanent guardian, it is illogical to conclude that a guardianship estate was pending from the time of filing until the court's refusal. *See Pratho*, 157 S.W.3d at 840.

to further act.[39]  Accordingly, the attempt by the trial court on October 5, 2001 to extend the expired temporary guardianship was of no effect.

The only procedure available to the trial court for appointing a new temporary guardian pending its determination of Kip's contested application for permanent guardianship is that set forth in section 875 of the Probate Code. Section 875(g) provides, in relevant part, that if

> the court determines that the applicant [for a temporary guardianship] has established that there is substantial evidence that the person is a minor or other incapacitated person, that there is imminent danger that the physical health or safety of the respondent will be seriously impaired, or that the respondent's estate will be seriously damaged or dissipated unless immediate action is taken, the court shall appoint a temporary guardian by written order.  The court shall assign to the temporary guardian only those powers and duties that are necessary to protect the respondent against the imminent danger shown.  The powers and duties must be described in the order of appointment.[40]

Additionally, section 875(k) provides,

> If an application . . . for a permanent guardianship is challenged or contested, the court, on the court's own motion or on the motion

---

[39] *See supra* notes 26-27 and accompanying text; *see also Hurley*, 66 S.W.2d at 395 ("The administration being closed by operation of law and the very terms of the order of the court making the appointment . . . a judicial decree is not available to continue the administration, or to direct the administrator to further act.").

[40] Act of Sept. 1, 1993, 73rd Leg., R.S., ch. 957, §1, 1993 Tex. Gen Laws 4081, 4152 (amended 2003)(current version at TEX. PROB. CODE ANN. § 875(g)(Vernon Supp. 2007)).

of any interested party, may appoint a new temporary guardian without issuing additional citation if the court finds that the appointment is necessary to protect the proposed ward or the proposed ward's estate. *A temporary guardian appointed under this subsection must qualify in the same form and manner required of a guardian under this code. . . .*[41]

The record shows that the trial court did not attempt to qualify a new temporary guardian "in the same form and manner required of a guardian" under the code after the original temporary guardianship expired on July 6, 2001.[42] Therefore, no estate was pending when the trial court attempted to transfer Kip's claims. The trial court, therefore, had no transfer jurisdiction over the claims.

In summary, neither the probate code, the trust code, the temporary guardianship, nor the application to convert the temporary guardianship to a permanent guardianship gives the trial court subject matter jurisdiction over Kip's tort claims against appellants for restitution and breach of fiduciary duty. Accordingly, we hold that the trial court lacked subject matter jurisdiction over

---

[41] Act of September 1, 1995, 74th Leg., R.S., ch 1039, §64, 1995 Tex. Gen. Laws 5168 (amended 2003)(current version at TEX. PROB. CODE ANN. § 875(k)(Vernon Supp. 2007)).

[42] *Id.*

those claims and that its judgment rendered against appellants on the claims is void.[43]  We sustain appellants' first issue.[44]

## IV.  Conclusion

Having sustained appellants' first issue, we vacate the trial court's judgment and render judgment dismissing the cause.[45]  Appellee's Motion for Rehearing is denied.


JOHN CAYCE
CHIEF JUSTICE

PANEL A:   CAYCE, C.J.; GARDNER and WALKER, JJ.

DELIVERED:  April 3, 2008

---

[43] *See DB Entertainment*, 927 S.W.2d at 289; *see also Mapco, Inc. v. Forrest,* 795 S.W.2d 700, 703 (Tex. 1990) (stating that a judgment is void "when it is apparent that the court rendering the judgment had . . . no jurisdiction of the subject matter").

[44] In light of our disposition of this issue, we need not consider appellants' and appellee's other issues or arguments.  *See* TEX. R. APP. P. 47.1 (providing that an appellate court need address only issues raised that are necessary to the final disposition of the appeal).

[45] TEX. R. APP. P. 43.2(c); *see Mobil Oil Corp.,* 128 S.W.3d at 725-26 (vacating orders in cases over which the statutory probate court had no subject matter jurisdiction and dismissing the cases).