**Reverse and Render; Opinion Filed July 9, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-17-00600-CV

### BMW OF NORTH AMERICA, LLC, Appellant
### V.
### CANDACE GUNN, ADMINSTRATRIX OF THE ESTATE OF GARY DON GUNN, SR., Appellee

**On Appeal from the Probate Court No. 2**
**Dallas County, Texas**
**Trial Court Cause No. PR-16-03004-2**

## MEMORANDUM OPINION

Before Justices Bridges, Myers, and Boatright
Opinion by Justice Myers

In this permissive appeal from the denial of its motion for summary judgment, appellant BMW of North America, LLC, asks us to review whether this lawsuit brought by appellee Candace Gunn, administratrix of the estate of Gary Don Gunn, Sr., was an impermissible collateral attack on a prior final judgment by a court of competent jurisdiction. In five issues, BMW argues (1) Candace Gunn's lawsuit should be dismissed as an impermissible collateral attack; (2) Gunn's claims are barred by res judicata; (3) Gunn's claims are precluded by a prior settlement agreement and contractual release; (4) Gunn is precluded from rescinding the prior settlement agreement and release; and (5) Gunn is not entitled to a declaratory judgment as a matter of law. We reverse the trial court's judgment and render judgment dismissing all claims.

## BACKGROUND AND PROCEDURAL HISTORY

In October of 2004, appellee Candace Gunn, as next friend of her husband Gary Don Gunn, Sr., an incapacitated adult, sued appellant BMW of North America (BMW) in the 68th Judicial District Court of Dallas County. The suit alleged that the motorcycle Gary Gunn was riding when he was seriously injured in an accident was unreasonably dangerous as designed, manufactured, marketed and tested. When a settlement was proposed, the trial court appointed a former district judge as a guardian ad litem to evaluate the terms of the settlement and determine whether the amount of the settlement to Gary Gunn was "fair and reasonable, given all the facts and circumstances of the case."

In the "Confidential Settlement Agreement and Complete Release," BMW paid a sum to the trustee for Candace Gunn, as next friend of Gary Gunn, in exchange for a release from liability for any claims made in connection with the motorcycle, the accident, and Gary Gunn's injuries. The agreement identified the releasors as follows:

> The parties who are releasing and discharging claims, actions and causes of action are CANDACE GUNN, As Next Friend of GARY DON GUNN, SR., an Incapacitated Adult, in Gary Don Gunn, Sr.'s individual capacity, and his heirs, executors, administrators, agents, successors, representatives, attorneys, assigns, and anyone claiming by or through them.

The settlement agreement was signed on December 10, 2004, by Candace Gunn as next friend of Gary Gunn, and was approved and payment acknowledged by the plaintiffs' counsel and the guardian ad litem. In a separate agreement signed that same day, Candace Gunn also released and discharged her claims, actions, and causes of action against BMW, among other parties.

At a "[p]rove-up" hearing held on December 10, 2004, Candace Gunn testified that she stood in Gary Gunn's shoes such that her signatures were "the same as if Gary were in here with us," and that the settlement agreement was in Gary Gunn's best interest. She understood that the settlement "finally and forever forecloses any future claims, demands or payments from BMW"

that she could make as Gary Gunn's next friend "or in any other capacity." She testified that her attorneys had fully explained the settlement documents and that she understood their terms. She testified that she knew the trial court would not approve the settlement unless it was what she wanted. She also testified that as next friend of Gary Gunn, she believed the settlement agreement was fair, just, equitable, and in the best interest of Gary Gunn. The guardian ad litem testified that he approved the settlement as "fair and reasonable and in the best interest of Gary Gunn. . . ."

On December 10, 2004, the trial court signed an agreed judgment approving the settlement and the releases. The judgment ordered, adjudged, and decreed that BMW was "fully discharged from any liability under the provisions of this judgment and fully discharged from any liability based on any claims, demands or causes of action arising out of the Accident and/or this Lawsuit." Candace Gunn approved the agreed judgment as to form and agreed to entry of the judgment, as did the plaintiffs' attorney and the guardian ad litem.

Almost eleven years later, in August of 2015, Candace Gunn, now serving as the administrator of her late husband's estate, brought an ancillary proceeding in a Dallas County probate court against BMW of North America, among other parties, based on the same motorcycle accident, factual allegations, alleged injuries, and legal theories as the previous action. This ancillary claim was severed into a separate proceeding, which is the case that is now before us. Gunn sought a declaration that the 68th Judicial District Court's judgment was void, arguing Gary Gunn suffered from a legal disability of mental incapacity after the accident, and that no guardian was appointed by a court of competent jurisdiction. She argued that although the 68th Judicial District Court purported to appoint a guardian ad litem on Gary Gunn's behalf, the district court had no authority to do so because Dallas County had dedicated probate courts that retained exclusive jurisdiction over that subject matter. She further argued Gary Gunn had not received due process as well as the process guaranteed to him under the laws of the State of Texas, and that

the releases that were signed on his behalf were ineffective because they were not approved by a duly appointed guardian for Gary Gunn.

BMW moved for traditional summary judgment on the grounds that the lawsuit was an impermissible collateral attack and that it was barred by res judicata and the releases the plaintiff signed, among other legal theories. In response, Candace Gunn argued that the 68th Judicial District Court had no authority to accept the prior settlement because the claims in that case were subject to the exclusive jurisdiction of a statutory probate court. She argued that the trial court lacked personal jurisdiction over Gary Gunn because it denied him due process. She argued res judicata did not apply because of a lack of privity, and that the bar of release was inapplicable because the releases were not signed by Gary Gunn. She also argued that the prerequisites for rescission did not apply. The trial court denied BMW's motion for summary judgment but granted BMW permission to bring this interlocutory appeal.

### DISCUSSION

In its first issue, appellant contends Gunn's probate court lawsuit must be dismissed because it is an impermissible collateral attack on a final judgment of a court of competent jurisdiction. Appellant argues that the 68th Judicial District Court had jurisdiction over Gary Gunn and had the authority to recognize Candace Gunn as next friend of Gary Gunn and appoint a guardian ad litem. Further, the 68th Judicial District Court issued a final judgment following a settlement agreement and a release of all claims.

A judgment of a court of general jurisdiction is not subject to collateral attack in a court of equal jurisdiction unless the judgment is void. *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985) (per curiam) (orig. proceeding). A judgment is void only if the court had no jurisdiction over the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the judgment, or no capacity to act as a court. *Id*. All other errors make the judgment merely voidable,

–4–

and may only be corrected through a direct attack. *Id*. "A direct attack is a proceeding instituted for the purpose of correcting the earlier judgment. It may be brought in the court rendering the judgment or in another court that is authorized to review the judgment on appeal or by writ of error." *Austin Indep. Sch. Dist. v. Sierra Club*, 495 S.W.2d 878, 881 (Tex. 1973). A direct attack can be in the form of a motion for new trial, appeal, or bill of review. *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 275 (Tex. 2012).

"A collateral attack is an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar against." *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005). Collateral attacks on final judgments are generally disallowed because of the policy to give finality to the judgments of courts. *Id*. at 345. "The reason for not allowing collateral attack on a final judgment is that such an attack would run squarely against principles of res judicata that are essential to a rational and functioning judicial system." *Engelman Irrigation Dist. v. Shields Bros., Inc*., 514 S.W.3d 746, 750 (Tex. 2017). In a collateral attack, we presume the validity of the judgment under attack. *Ramsey v. Ramsey*, 19 S.W.3d 548, 552 (Tex. App.—Austin 2000, no pet.). Extrinsic evidence may not be used to establish a lack of jurisdiction in a collateral attack on a judgment. *Holloway v. Starnes*, 840 S.W.2d 14, 18 (Tex. App.—Dallas 1992, writ denied).

Because this case is a collateral attack, it can only succeed if the December 10, 2004 agreed judgment from the 68th Judicial District Court is void. *See Browning*, 698 S.W.2d at 363; *see also Hagen v. Hagen*, 282 S.W.3d 899, 902 (Tex. 2009) ("The decree must be void, not voidable, for a collateral attack to be permitted."). The Texas Supreme Court has repeatedly held that "[a] judgment is void only when it is apparent that the court rendering the judgment had no jurisdiction of the parties, no jurisdiction of the subject matter, no jurisdiction to enter the judgment, or no

capacity to act as a court." *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990) (per curiam) (orig. proceeding); *accord Prostok*, 165 S.W.3d at 346; *Browning*, 698 S.W.2d at 363; *Austin Indep. Sch. Dist.*, 495 S.W.2d at 881. All other errors render the judgment merely voidable, not void, and such errors must be corrected through a direct attack. *Browning*, 698 S.W.2d at 363.

Appellee's argument regarding the 68th Judicial District Court's alleged lack of subject matter jurisdiction is that the probate code granted exclusive jurisdiction to the probate courts to adjudicate anyone with a mental incapacity and to appoint a guardian, and that the probate court, therefore, was the only court that could have appointed a guardian over the person or estate of Gary Gunn. As a result, according to appellee, the 68th Judicial District Court had no jurisdiction to declare Gary Gunn an incapacitated adult and appoint a guardian ad litem or to recognize his wife, Candace Gunn, as next friend with authority to act on Gary Gunn's behalf. Appellee also argues that the 68th Judicial District Court did not follow the probate code's procedures for the appointment of guardian over a person or estate, thereby depriving Gary Gunn of his substantive and procedural due process rights.

We conclude that appellee's argument blurs the long-recognized distinction between guardianship proceedings, which occur in a probate court, and the appointment of a guardian ad litem—a common tool that courts routinely employ to ensure a proposed settlement's fairness. In 2004, the appointment of a guardian was governed by section 693 of the probate code, which read as follows:

> If it is found that the proposed ward is totally without capacity as provided by this code to care for himself or herself and to manage the individual's property, the court may appoint a guardian of the individual's person or estate, or both, with full authority over the incapacitated person except as provided by law.

TEX. PROB. CODE ANN. § 693(a), repealed by Acts 2011, 82nd Leg., ch. 823 (H.B. 2759), § 3.02(a), eff. Jan. 1, 2014 (current version at ESTATES CODE § 1101.151). By contrast, the appointment of a guardian ad litem was, in 2004, governed by rule 173 of the Texas Rules of Civil Procedure:

> When a minor, lunatic, idiot or a non-compos mentis may be a defendant to a suit and has no guardian within this State, or where such person is a party to a suit either as plaintiff, defendant or intervenor and is represented by a next friend or a guardian who appears to the court to have an interest adverse to such minor, lunatic, idiot or non-compos mentis, the court shall appoint a guardian ad litem for such person and shall allow him a reasonable fee for his services to be taxed as a part of the costs.

TEX. R. CIV. P. 173 (1943, amended 2005).[1] A guardian ad litem is an officer appointed by the court to assist in properly protecting a party's interests. *Jocson v. Crabb*, 133 S.W.3d 268, 271 (Tex. 2004) (quoting *Am. Gen. Fire & Cas. Co. v. Vandewater*, 907 S.W.2d 491, 493 n. 2 (Tex. 1995)). "The term 'ad litem' means 'for the suit.'" *Brownville-Valley Regional Medical Center, Inc. v. Gamez*, 894 S.W.2d 753, 756 (Tex. 1995) (citing BLACK'S LAW DICTIONARY 43 (6th ed. 1990)). "The representation of an ad litem is limited to matters related to the suit for which he or she is appointed." *Id.* "When an offer has been made to settle the claim of a party represented by a next friend or guardian, a guardian ad litem has the limited duty to determine and advise the court whether the settlement is in the party's best interest." TEX. R. CIV. P. 173.4(c) (current version); *see also Goodyear Dunlop Tires N. Am., Ltd., v. Gamez*, 151 S.W.3d 574, 584 (Tex. App.—San Antoni 2004, no pet.) ("A guardian ad litem clearly has the duty to evaluate a proposed settlement from the minor's perspective and make a recommendation to the court on the minor's behalf.").

Appellee's argument rests on the assertion that the 68th Judicial District Court's decision to appoint a guardian ad litem in 2004 somehow deprived it of jurisdiction, but we have found no authority supporting such an argument. A probate court is vested with only the jurisdiction the Legislature expressly confers. *In re Guardianship of Gibbs*, 253 S.W.3d 866, 870 & n. 3 (Tex. App.—Fort Worth 2008, pet. dism'd). A probate court's exclusive jurisdiction is invoked only "upon the filing of an application for the appointment of a guardian over a person or his estate and until the guardianship is settled and closed. . . ." *Wood, ex rel. Green v. Dalhart R&R Machine*

---

[1] On January 27, 2005, the Texas Supreme Court revised rule 173, effective February 1, 2005, for all pending cases. *Youngstown Area Jewish Fed. v. Dunleavy*, 223 S.W.3d 604, 609 (Tex. App.—Dallas 2007, no pet.). Although the revisions to rule 173 clarified the role of a guardian ad litem, that role was defined well before the revisions. *Id.*

*Works, Inc.*, 259 S.W.3d 229, 230 (Tex. App.—Amarillo 2008, no pet.). "[T]he legislative intent behind the probate court jurisdictional statutes was to confer a narrow grant of jurisdiction to statutory probate courts." *Stauffer v. Nicholson*, 438 S.W.3d 205, 215 (Tex. App.—Dallas 2014, no pet.) (holding that "general tort claims" not proven to affect a trust do not fall within the jurisdiction of the probate court). "[B]road construction of the jurisdictional statutes would lead courts to the absurd result that 'every lawsuit touching on [probate matters properly within the court's jurisdiction], however slightly or tangentially, would come within the subject matter jurisdiction of the statutory probate courts, regardless of the subject matter.'" *Id.* (quoting *Gibbs*, 253 S.W.3d at 872).

The 68th Judicial District Court's appointment of a guardian ad litem was well within its settled authority and did not intrude into the probate court's authority over guardianship proceedings. Candace Gunn never filed an application for guardianship over Gary Gunn in 2004. As a result, no jurisdiction ever attached, much less became exclusive, in any probate court. Furthermore, Gunn never objected to the appointment of a guardian ad litem. In fact, she testified at the "[p]rove-up" hearing that she was "[a]bsolutely" satisfied with the services he provided, and she acknowledged that the guardian ad litem's role was solely to advise the court whether the amount of the settlement was fair and reasonable and in her husband's best interest. She also acknowledged that she understood the guardian ad litem would have no continuing role in the case if the trial court approved the settlement, which is unlike the role of a guardian.

Another argument raised by appellee is that the appointment of a guardian ad litem inevitably decided a "mental health matter" that was within the probate court's exclusive jurisdiction, but this argument is similarly unpersuasive. As a court of general jurisdiction, the 68th Judicial District Court was presumed to have subject matter jurisdiction over appellee's lawsuit. *See Engelman*, 514 S.W.3d at 753. Moreover, the original petition admitted that "Plaintiff

–8–

Gary Don Gunn, Sr. is an incapacitated adult" who was "under a legal disability as he is of unsound mind as a result of his catastrophic head injury." No one contested the representation in the original petition that Gary Gunn "suffered catastrophic and permanent brain damage that has rendered him unable to work or care for himself." By signing the settlement and the release agreement, Candace Gunn, as her husband's next friend, represented and warranted "that Gary Don Gunn, Sr. is incapacitated and unable to settle his own business affairs and has been so incapacitated at all times since the occurrence of the Accident." The 68th Judicial District Court was entitled to rely on the uncontested representation that Gary Gunn could not care for his own interests in the litigation. *See, e.g.*, *Yost v. Jered Custom Homes*, 399 S.W.3d 653, 663 (Tex. App.—Dallas 2013, no pet.) ("Statements of fact in live pleadings that are not pleaded in the alternative are regarded as judicial admissions.") (citing *Hous. First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983)). Judicial admissions constitute formal waivers of proof that dispense with the need to produce evidence on an issue. *Id*.

Appellee also argues that the 68th Judicial District Court lost subject matter jurisdiction when it accepted her appearance as her husband's next friend. However, rule 44 of the rules of civil procedure allows for "[m]inors, lunatics, idiots or persons non compos mentis who have no legal guardian" to appear through a "next friend." TEX. R. CIV. P. 44. It is not at all unusual for personal injury lawsuits to be brought by next friends, and such cases are routinely settled, and those settlements approved in trial courts, without the appointment of a guardian. "[A]ll that is necessary to be represented by a next friend is that the party merely be incapable, by reason of mental or bodily infirmity, of properly caring for his or her own interests in the litigation." *Abbott v. G.G.E.*, 463 S.W.3d 633, 645 (Tex. App.—Austin 2015, pet. denied). This standard—tied to the inability to care for one's own interests in the litigation—is separate from the guardianship standard that required a finding that the person is "totally without capacity as provided by this code

to care for himself or herself."  TEX. PROB. CODE ANN. §693(a); *see Lindly v. Lindly*, 102 Tex. 135, 141, 113 S.W. 750 (1908) ("[T]he rules of practice in courts of equity permit the representation by next friend of parties to suits who, though not non compos mentis, are, by reason of mental or bodily infirmity, incapable of properly caring for their own interests in the litigation.").

As we noted earlier, the original petition represented that Gary Gunn was an incapacitated adult who was operating under a legal disability, and no one disputed this assertion.  The 68th Judicial District Court was entitled to presume Candace Gunn had her husband's consent to appear as his next friend, since there was neither evidence nor argument to the contrary.  *Abbott*, 463 S.W.3d at 645; *Kaplan v. Kaplan*, 373 S.W.2d 271, 274 (Tex. Civ. App.—Houston 1963, no writ) (where an adult's petition is filed by a next friend alleging the person is "of weak or unsound mind and not capable of taking care of his own affairs, . . . it is presumed that the action is brought with the permission and such consent as this person is capable of giving and that it is in fact his suit").  Additionally, the final judgment recited "that Candace Gunn is authorized to settle and compromise all claims on behalf of GARY DON GUNN, SR., An Incapacitated Adult," and that recital is binding.  *See Toles v. Toles*, 113 S.W.3d 899, 914 (Tex. App.—Dallas 2003, no pet.) (jurisdictional recitals in the final judgment under attack are binding), *abrogated on other grounds by Cantey Hanger*, *LLP v. Byrd*, 467 S.W.3d 477 (Tex. 2015).

Appellee also cites *Saldarriaga v. Saldarriaga*, 121 S.W.3d 493 (Tex. App.—Austin 2003, no pet.), a divorce proceeding in which the Austin Court of Appeals determined that the district court erred by circumventing the procedural requirements for the appointment of a guardian by appointing a "next friend" to act on the wife's behalf.  *See id*. at 494–95.  The appellate court reversed the district court's order appointing the "next friend" and remanded the case for further proceedings.  *Id*. at 502.  In *Saldarriaga*, however, consent and capacity were at issue when the

trial court appointed the next friend to represent the wife during the divorce proceeding without a formal adjudication of her incompetence and approved a settlement agreement executed by the next friend over the wife's objections. *Id*. at 494–95. The appellate court stated that the trial court had no jurisdiction to conduct guardianship proceedings and that the proper procedures were not followed to permit any court to proceed to a determination of the wife's incapacity. *Id*. at 501. Instead, the trial court tried to appoint a next friend to effectively serve as the wife's guardian. *Id*. The appellate court concluded the trial court abused its discretion by not referring the motion to the probate court to consider in a timely manner the need for a guardianship. *Id*.

Unlike that case, the 68th Judicial District Court did not attempt to appoint a guardian over Gary Gunn's person or estate; the court accepted his wife's appearance as next friend, to which there was no objection. And the next friend did not settle Gary Gunn's personal injury claims while a guardianship proceeding was pending in the probate court. *See id*. at 496 (noting that shortly after his appointment as next friend, the attorney filed a guardianship proceeding on the wife's behalf in the probate court). In addition, the Austin Court of Appeals later clarified that *Saldarriaga* applies when the person's "capacity or consent are contested because, if in fact a person is competent, he is entitled to appear in person or through a representative of his choice." *Abbott*, 463 S.W.3d at 644. In this case, no one disputed Gary Gunn's inability to represent himself. More importantly, *Saldarriaga* was a direct appeal in which the appellate court found error and reversed—it was *not* a collateral attack on a prior judgment. Error renders a judgment voidable, not void, and thus not subject to collateral attack. We conclude *Saldarriaga* does not support appellee's argument.

Appellee next argues that Gary Gunn never appeared in any capacity in the trial court, nor did anyone appear on his behalf. But it is a well-settled principle of law that the real party plaintiff is not the next friend but the person being represented, and he is before the trial court as though he

had sued in his own name. *See, e.g., Gracia v. RC Cola–7–Up Bottling Co.*, 667 S.W.2d 517, 519 (Tex. 1984); *Zachry v. Robertson*, 214 S.W.2d 949, 952 (Tex. 1948); *Garza v. Fliedner*, No. 05–15–01067–CV, 2016 WL 7438756, at *4 (Tex. App.—Dallas Dec. 27, 2016, pet. filed) (mem. op.); *Fling v. Steed*, No. 07–99–0450–CV, 2001 WL 238982, at *5 (Tex. App.—Amarillo Mar. 12, 2001, pet. denied) (mem. op.). Gary Gunn was the real party plaintiff in the 2004 litigation, and Candace Gunn was the nominal plaintiff—the conduit through which he appeared. As such, Candace Gunn was authorized to bring suit on her husband's behalf even if she was not personally injured by BMW's alleged conduct. *Highland Credit Opportunities CDO, L.P. v. UBS AG*, 451 S.W.3d 508, 515 (Tex. App.—Dallas 2014, no pet.) ("A plaintiff with no legally cognizable interest in the outcome of the case lacks standing to sue on its own behalf, but may be authorized to sue on behalf of another.").

Yet another argument made by appellee is that Gary Gunn was denied procedural due process because the probate code's requirements for a guardianship proceeding were not followed. Appellee cites the general rule that a judgment may be collaterally attacked "[a]fter the time to bring a direct attack has expired," "when a failure to establish personal jurisdiction violates due process." *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 272–73 (Tex. 2012). In *PNS*, the complaints were technical defects in service—such as the citation's failure to list the time of service, the service agent, and whether the citation had been on file for ten days preceding the default judgment. *See id*. at 273. Texas courts distinguish "between technical defects in service and a complete failure or lack of service, concluding that only the latter violates due process." *Id*. at 274.

The situation in the present case is quite different. None of appellee's complaints amount to a "complete failure or lack of service." Gary Gunn had notice and appeared through his wife as next friend. He could not have lacked notice of his own lawsuit, and in the absence of evidence to the contrary, which has not been offered, Gary Gunn is presumed to have consented to the filing

and it is presumed to be his suit. *See Abbott*, 463 S.W.3d at 645; *see also Vandewater*, 907 S.W.2d at 492–93 (no deficiencies in notice or due process were raised when representative filed answer in capacity as next friend).

We therefore conclude that this collateral attack on the 68th Judicial District Court's December 10, 2004 agreed judgment fails because there has been no showing the judgment is void. We sustain appellant's first issue, reverse the probate court's judgment, and render judgment dismissing all claims. Because of this conclusion, it is unnecessary for us to address appellant's remaining issues.

<u>/Lana Myers/</u>
LANA MYERS
JUSTICE

170600F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BMW OF NORTH AMERICA, LLC,
Appellant

No. 05-17-00600-CV      V.

CANDACE GUNN, ADMINSTRATRIX
OF THE ESTATE OF GARY DON
GUNN, SR., Appellee

On Appeal from the Probate Court No. 2,
Dallas County, Texas
Trial Court Cause No. PR-16-03004-2.
Opinion delivered by Justice Myers.
Justices Bridges and Boatright
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** dismissing all claims. It is **ORDERED** that appellant BMW OF NORTH AMERICA, LLC recover its costs of this appeal from appellee CANDACE GUNN, ADMINSTRATRIX OF THE ESTATE OF GARY DON GUNN, SR.

Judgment entered this 9th day of July, 2018.