**Reverse in part and Render; Opinion Filed July 30, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01009-CV

### TED STAUFFER, Appellant
### V.
### JANE T. NICHOLSON, Appellee

### On Appeal from the Collin County Probate Court
### Collin County, Texas
### Trial Court Cause No. PB1-0842-2012

## OPINION

Before Justices O'Neill, Lang-Miers, and Evans
Opinion by Justice Evans

This interlocutory appeal arises out of a lawsuit Jane T. Nicholson filed in probate court against her brother Ted Stauffer a nonresident. Nicholson sued Stauffer individually and as "Successor Trustee of the Anne Bodulus Stauffer Revocable Trust." Stauffer filed a special appearance to the action asserting the court lacked personal jurisdiction over him. After a hearing, the court denied the special appearance in part, refusing to dismiss those claims related or "ancillary" to a certain investment account created and governed by the court's order in a previous lawsuit. On appeal, Stauffer contends the trial court erred in not dismissing all of the claims asserted against him because Nicholson's causes of action do not arise from or relate to any contacts he had with Texas. For the reasons that follow, we reverse in part the trial court's order denying in part Stauffer's special appearance, and render judgment of dismissal of this case

for lack of personal jurisdiction over Stauffer as successor trustee and lack of subject matter jurisdiction over the claims asserted against Stauffer individually.

## I. FACTUAL BACKGROUND

In April 2008, Anne Stauffer sued Nicholson, her daughter, in Collin County Probate Court seeking to recover funds allegedly belonging to Anne.[1] Appellant, Anne's son, assisted his mother in the lawsuit by participating telephonically from out of state in a recorded hearing and by making an agreement on the record with Anne and Nicholson that became embodied in the final agreed order (2008 order) resolving the 2008 lawsuit.

Among other things, the 2008 order required Nicholson to transfer the balance of certain funds to an investment account established by Anne. The 2008 order further provided that Stauffer and Nicholson would be payable on death beneficiaries of the investment account. Moreover, aside from certain amounts specifically identified in the order, funds could not be withdrawn or transferred out of the investment account "without the express written approval of each of" Anne, Nicholson, and Stauffer. In a separate paragraph, the 2008 order provided "this Court will retain continuing jurisdiction to enforce the terms of this Order." Stauffer and Nicholson each signed the 2008 order over lines beneath which only each of their typed names appeared. Anne died in 2011.

In September 2012, Nicholson filed the present action against Stauffer individually and as successor trustee.[2] In her petition, Nicholson asserted the probate court had personal jurisdiction over Stauffer because he engages or has engaged in business in Texas and the lawsuit "arises out of the business done in this state and to which said Stauffer is a party." Among other things, Nicholson factually alleged Stauffer had removed funds from the

---

[1] Anne filed suit in her individual capacity and as trustee of the Anne Bodulus Stauffer Revocable Trust.

[2] Nicholson also sued her cousin John Bernot as trustee of the Trust. The probate court granted Bernot's special appearance and that ruling has not been appealed.

investment account created pursuant to the 2008 order and that the probate court expressly retained jurisdiction to enforce the terms of the 2008 order. Nicholson also alleged Stauffer moved funds belonging to the Trust and unduly influenced Anne to execute an amendment to the Trust. For her causes of action as regards funds allegedly taken from both the investment account and the Trust, Nicholson asserted conversion, violations of the Texas Theft Liability Act, and money had and received. As regards Nicholson's own property without specifying if she meant the investment account and Trust, Nicholson alleged unjust enrichment. As regards solely the Trust, Nicholson alleged breach of fiduciary duty, lack of capacity of Anne and undue influence over Anne regarding a 2011 an amendment to the Trust, fraud and constructive fraud, and tortious interference with inheritance rights. Nicholson sought a declaration invalidating the 2011 Trust amendment alleging Anne's lack of capacity, undue influence, and lack of required formalities. Nicholson also sought a constructive trust on property and proceeds that Stauffer obtained by fraud or other tortious conduct, exemplary damages, and attorney's fees.

Stauffer filed a special appearance denying he was ever a resident of, engaged in business in, or maintained a place of business in, Texas. He further asserted he had no substantial connection or contacts with Texas and that Nicholson's claims did not arise from or relate to any activity conducted by Stauffer in Texas. Nicholson responded that the probate court had personal jurisdiction because Stauffer signed the 2008 order in which the court specifically retained jurisdiction to address issues related to the investment account.[3] After a hearing, the probate court granted in part Stauffer's special appearance dismissing all claims against him except for those that related to, or were ancillary to, the investment account. In its findings of facts and conclusions of law, the probate court concluded it had specific jurisdiction over

---

[3] Nicholson's written response to the special appearance, if any, is not in the record. This is the argument she made at the hearing on the special appearance.

Stauffer "to enforce the terms of the May 2008 order for the limited purpose of determining whether there has been a breach of the Agreed Order as well as any ancillary issues pertaining to the investment account." Stauffer timely perfected this interlocutory appeal.

## II. ANALYSIS OF PERSONAL JURISDICTION

### A. Standard of Review

In a special appearance, the defendant bears the burden of negating all bases of personal jurisdiction alleged by the plaintiff. *See Kelly v. Gen. Interior Constr. Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). If a lower court enters an order denying a special appearance, and the lower court issues findings of fact and conclusions of law, the appellant may challenge the fact findings on legal and factual sufficiency grounds. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Whether a court can exercise personal jurisdiction over a nonresident defendant is a question of law, and thus we review de novo the lower court's determination of a special appearance. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007).

### B. Consent Jurisdiction

Under her argument regarding specific jurisdiction, Nicholson argues Stauffer consented to jurisdiction of the probate court by agreeing to the clause in the 2008 order that provides that the probate court will "retain continuing jurisdiction to enforce the terms of this Order." Stauffer does not contest in these proceedings that the clause affects consent to jurisdiction over enforcement of the 2008 order. Stauffer argues the clause does not include Nicholson's claims in this suit.

We have previously held a consent-to-jurisdiction clause that encompasses claims against a nonresident defendant obviates the need to rely solely on traditional analysis of minimum contacts. This is because in such instances where a defendant has consented to jurisdiction, there is another legitimate and stronger means to establish a court's jurisdiction over the nonresident

defendant. *See RSR Corp. v. Siegmund*, 309 S.W.3d 686, 704 (Tex. App.—Dallas 2010, no pet.) (citing *Monesson v. Nat'l Equip. Rental, Ltd.*, 594 S.W.2d 780, 781 (Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e.); *Barnette v. United Research Co.*, 823 S.W.2d 368, 370 (Tex. App.—Dallas 1992, writ denied); *Dunne v. Libbra*, 330 F.3d 1062, 1064 (8th Cir. 2003). In such cases, we have rested our decisions on precedent recognizing personal jurisdiction as a "waivable right" and the "variety of legal arrangements" that allow a litigant to give "express or implied consent to the personal jurisdiction of the court." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n. 14 (1985)); *see also Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982). Furthermore, "[t]o the extent a party has consented to jurisdiction in a particular forum, the trial court's exercise of personal jurisdiction over it does not violate due process even in the absence of contacts with Texas." *Id.*; *see also CNOOC Se. Asia Ltd. v. Paladin Res. (SUNDA) Ltd.*, 222 S.W.3d 889, 894 (Tex. App.—Dallas 2007, pet. denied) (op. on rehearing) ("A forum-selection clause obtained through freely negotiated agreements does not offend due process, provided it is not unreasonable and unjust."). Limitations on consent to jurisdiction clauses based on concerns a clause is unreasonable or unjust have not been raised in this interlocutory appeal.[4]

In analyzing claims that allegedly fall within the scope of negotiated consent-to-jurisdiction clauses, we conduct a "common-sense" examination of an agreement's relevant jurisdictional clauses and their relationship to the claims of the lawsuit. *RSR Corp.*, 309 S.W.3d at 700. Recognizing forum-selection clauses as creatures of contract, we apply principles of contract interpretation. *Id.* In interpreting the jurisdictional clause, our goal is thus to ascertain

---

[4] Forum-selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972); *see also Burger King*, 471 U.S. at 473 n. 14. A forum selection clause will be invalidated only (1) if it was the product of fraud or overreaching, (2) if the agreed forum is so inconvenient as to deprive the litigant of his day in court, or (3) if enforcement would contravene a strong public policy of the forum in which the suit is brought. *M/S Bremen*, 407 U.S. at 15.

the true intent of the parties as written in the agreement. *Id.* Consequently, we give terms their plain, ordinary, and generally accepted meanings, and contracts are to be construed as a whole in an effort to harmonize and give effect to all provisions of the contract. *See id.*; *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (2005). Upon determining that claims fall within the scope of the clause, application of the Texas long-arm statute and analysis of the nonresident defendant's contacts with Texas are unnecessary and a lower court's jurisdiction over the defendant as to those claims is valid and enforceable. *Id.*

The clause before us in the 2008 order does not contain language extending its application to claims "arising from or related to" enforcement of the 2008 order. Using a common sense reading of this clause, the probate court's retention of jurisdiction applies to enforcement of the order but not to claims beyond enforcement of the order. Nor is it reasonable to read into the narrowly written clause an expectation on the part of a nonresident that he would be required to defend in the probate court against claims other than those for enforcement of the 2008 order. The probate court made findings of fact that Stauffer, Anne, and Nicholson entered into the agreement at an injunction hearing in the 2008 lawsuit, Stauffer participated in the lawsuit, Stauffer "was a party to" the agreement on the record and the 2008 order, and that Stauffer signed the 2008 order "as agreed to form and content." Stauffer does not contest these facts, but he contends the continuing jurisdiction clause does not cover the claims asserted by Nicholson. Thus, we must determine whether any of Nicholson's claims seek enforcement of the 2008 order; otherwise her claims are beyond the scope of the order's jurisdictional clause.

Enforcement of a court order involves a motion or pleading in which a party seeks as relief from the court the exercise of the court's power to compel compliance with the order or punish noncompliance typically using the threat of the court's power to impose sanctions or hold a party in contempt. *See, e.g., Response Time, Inc. v. Sterling Commerce (N. Am.), Inc.*, 95

S.W.3d 656, 659 (Tex. App.—Dallas 2002, no pet.) (discovery sanctions to secure compliance, deter other litigants from violating the discovery rules, and punish parties who violate the discovery rules); *Ex parte Pryor*, 800 S.W.2d 511, 512 (Tex. 1990) (a contempt order involves a court's enforcement of its own orders); *see generally* TEX. R. CIV. P. 308 (court's power to enforce its judgments); TEX. GOVT. CODE ANN. §§ 21.001 –.002 (court's inherent and statutory powers to enforce its orders including contempt powers). This is consistent with the plain, ordinary, and generally accepted meaning of "enforce" which is "requiring operation, observance, or protection of . . . orders, contracts, and agreements by authority . . . ." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 751 (1981). We, therefore, make a common sense review of Nicholson's pleading to determine if she pleaded for observance of, or compliance with, the 2008 order or for punishment for non-compliance.

Nicholson's petition contains a recitation in the factual section regarding the 2008 order and the court's retaining jurisdiction to enforce the terms of the order. She alleges the 2008 order prohibited Stauffer from withdrawing or transferring funds out of the investment account without her permission. Nicholson's causes of action regarding the investment account are predicated on this theory. Nowhere in her petition did Nicholson request Stauffer's compliance with the 2008 order or punishment of Stauffer for non-compliance with it. Because a common sense examination of the 2008 order and Nicholson's petition demonstrates that none of Nicholson's claims seek enforcement of the 2008 order by compulsion or punishment, the continuing jurisdiction clause does not pertain to Nicholson's claims in this lawsuit. Accordingly, by signing the 2008 order, Stauffer did not consent to jurisdiction in Texas to be sued for the claims Nicholson now asserts against him.

### C. Specific Jurisdiction Regarding Stauffer as Trustee

We next examine both[5] parties' arguments about specific jurisdiction.[6] Nicholson sued Stauffer individually and as successor trustee of the Trust. Neither party makes a distinction in their arguments between these two capacities and the record is devoid of any mention of Stauffer as a successor trustee beyond the style of the case—no pleaded allegation nor fact in the record. The probate court's order does not distinguish between these capacities, so the order does not dismiss the claims against Stauffer in his alleged capacity of a successor trustee.

The capacity in which a non-resident has contact with a forum state must be considered in the jurisdictional analysis. *Tabacinic v. Frazier*, 372 S.W.3d 658, 666 (Tex. App.—Dallas 2012, no pet.) (non-resident's execution of documents without indication of representative capacity for business entity subjecting signer to individual liability were contacts to be considered pertaining to non-resident's individual, specific, personal jurisdiction); *see generally Stull v. LaPlant*, 411 S.W.3d 129, 134 (Tex. App.—Dallas 2013, no pet.) (personal jurisdiction over nonresident in capacity in which nonresident sued may be challenged in special appearance). In order to properly analyze Stauffer's amenability to jurisdiction, we will consider first the parties' specific jurisdiction arguments as they pertain to the claims against Stauffer as successor trustee of the Trust.

---

[5] Stauffer complains that Nicholson did not properly plead jurisdictional facts. Nicholson responds that Stauffer waived this argument by not raising it in the probate court. Stauffer is correct that under the Texas long-arm statute, the plaintiff has the initial burden to plead sufficient allegations to confer jurisdiction. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009). Nicholson is also correct that this minimal pleading requirement is satisfied by an allegation that the nonresident defendant is doing business in Texas. *See Dole v. LSREF2 APEX 2, LLC*, 425 S.W.3d 617, 624 (Tex. App.—Dallas 2014, no pet.); *Assurances Generales Banque Nationale v. Dhalla*, 282 S.W.3d 688, 695 (Tex. App.—Dallas 2009, no pet.) (citing cases from several courts of appeals). As Nicholson points out, she included such allegations. Accordingly, even if Stauffer's argument is waived, were we to reach the issue we would conclude Nicholson's allegations satisfied her jurisdictional pleading obligations.

[6] Neither party argues general jurisdiction applies and the probate court found only that Stauffer was amenable to personal jurisdiction under the theory of specific jurisdiction.

Employing the standards of review we announced above, we analyze specific jurisdiction on a claim-by-claim basis, unless we are shown that all claims arise from the same contacts with Texas. *See Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013). Specific jurisdiction exists when the nonresident defendant's alleged liability arises out of or is related to his activity connected to the forum. *Moki Mac*, 221 S.W.3d at 576. The contacts with the forum which we are to analyze for jurisdictional purposes are those "where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum State." *Gazprom*, 414 S.W.3d at 151 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 475 (1985)). A substantial connection can result from even a single act. *Id.* (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). But "there must be a substantial connection between those contacts and the operative facts of the litigation." *Id*. at 156 (quoting *Moki Mac*, 221 S.W.3d at 585). The operative facts are those on which the trial will focus to prove the liability of the defendant who is challenging jurisdiction. *See id*. (citing *Moki Mac*, 221 S.W.3d at 585).

Here the only contacts with Texas the parties argue about are Stauffer's participation in the 2008 lawsuit and agreement to the 2008 order. The parties argue those contacts as to all of Nicholson's claims in the aggregate. Accordingly, we will analyze Stauffer's contacts as related to all of Nicholson's claims in the aggregate.

Stauffer was not a party to the 2008 lawsuit in any capacity. He participated in the 2008 lawsuit because Anne was his mother and "was a quadriplegic from her neck down, she required full care" which Stauffer provided to her so she "relied heavily" on Stauffer. There is no evidence in this record when, if ever, Stauffer was a successor trustee of the Trust, so there is no evidence that he was a trustee in 2008 at the time of his alleged participation in the 2008 lawsuit. He signed the 2008 order without indicating it was in any capacity other than his personal

capacity by signing the order over his typed name thereby subjecting himself to personal liability. *See Tabacinic*, 372 S.W.3d at 666. There are, therefore, no facts in this record demonstrating that Stauffer as successor trustee had any contacts with Texas. Accordingly, the probate court could not exercise personal jurisdiction over Stauffer as successor trustee of the Trust in light of Stauffer's objection. The probate court abused its discretion by not granting Stauffer's special appearance and dismissing all claims and causes of action against Stauffer as successor trustee.

### III. Analysis of Subject Matter Jurisdiction of the Remaining Claims

Nicholson's remaining claims seek damages from Stauffer individually to Nicholson personally or other remedies for Nicholson. What remain are simply tort claims between a sister and brother. However, we first must consider the probate court's subject matter jurisdiction over Nicholson's tort claims against Stauffer before we determine whether Stauffer is subject to personal jurisdiction in Texas for those claims because a court cannot enter a valid judgment if it lacks subject matter jurisdiction. *Dubai Petroleum Co. v. Kazi,* 12 S.W.3d 71, 74–75 (Tex. 2000).

Probate courts are courts of limited jurisdiction. *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 302–03 (Tex. 2010) (contrasting section 25.0021 of the Texas Government Code describing limited jurisdiction of statutory probate courts with sections 24.007–.008 outlining district court general jurisdiction). We, therefore, are duty-bound to consider whether the probate court and we have subject matter jurisdiction over Nicholson's remaining claims. *See Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 379 (Tex. 2006) ("Subject-matter jurisdiction cannot be waived or conferred by agreement, must be considered by a court *sua sponte*, and can be raised for the first time on appeal."); *Bank of New York Mellon v. Guzman*, 390 S.W.3d 593, 596 (Tex. App.—Dallas 2012, no pet.) (court "required to review *sua sponte*

issues affecting jurisdiction") (citing *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004) (per curiam)); *Moses v. Dallas Indep. Sch. Dist.*, 12 S.W.3d 168, 170 (Tex. App.—Dallas 2000, no pet.) ("Although none of the parties have specifically raised or briefed this jurisdictional issue, the trial court's lack of subject matter jurisdiction is fundamental error that we may raise *sua sponte* because our jurisdiction over the merits of a case is no greater than that of the court from which the appeal is taken."). Subject matter jurisdiction is essential to a court's authority to decide a case. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 553–54 (Tex. 2000); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 443 (Tex. 1993). The failure of a jurisdictional requirement deprives a court of the power to hear the action. *City of DeSoto v. White,* 288 S.W.3d 389, 393 (Tex. 2009). If a court lacks subject matter jurisdiction it has no choice but to dismiss the case. *Tex. Ass'n of Bus.,* 852 S.W.2d at 446. If the probate court lacks subject matter jurisdiction over the remaining claims, we must dismiss those claims rather than determine whether Stauffer is amenable to personal jurisdiction in Texas for those claims.

### A. Standard of Review

Whether a court has subject matter jurisdiction is a question of law. *State v. Holland,* 221 S.W.3d 639, 642 (Tex. 2007); *Tex. Dep't of Parks and Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex. 2004). We construe the pleadings liberally in favor of conferring jurisdiction. *Tex. Dep't of Transp. v. Ramirez,* 74 S.W.3d 864, 867 (Tex. 2002); *Dallas Cnty. Appraisal Dist. v. Funds Recovery, Inc.*, 887 S.W.2d 465, 469 (Tex. App.—Dallas 1994, writ denied) ("When reviewing subject matter jurisdiction *sua sponte,* we must construe the petition in favor of the pleader, and if necessary, review the entire record to determine if any evidence supports jurisdiction.").

### B. Collin County Probate Court's Subject Matter Jurisdiction

The supreme court endorsed five sources courts should analyze to determine the subject matter jurisdiction of any particular trial court:

–11–

> [R]ecourse must be had first to the Constitution, second to the general statutes establishing jurisdiction for that level of court, third to the specific statute authorizing the establishment of the particular court in question, fourth to statutes creating other courts in the same county (whose jurisdictional provisions may affect the court in question), and fifth to statutes dealing with specific subject matters (such as the Family Code, which requires, for example, that judges who are lawyers hear appeals from actions by non-lawyer judges in juvenile cases).

*In re United Servs. Auto. Ass'n*, 307 S.W.3d at 303–04 (quoting Office of Court Administration, Subject–Matter Jurisdiction of the Courts at 1). Accordingly, we will examine the jurisdiction of the probate court in Collin County considering the sources for its jurisdiction in the order prescribed by the supreme court.

The Texas Constitution does not specifically provide for probate courts, but generally grants the Legislature authority to create courts and prescribe their jurisdiction. *See* TEX. CONST. art. V, §§ 1, 8. The Legislature enacted general probate court jurisdiction in the government code provisions for statutory county courts which defers to the probate court jurisdiction the Legislature enacted in the Texas Probate Code, now recodified in the Texas Estates Code.[7] *See* TEX. GOV'T CODE ANN. §25.0021 (West 1987). Because the Legislature established the Collin County Probate Court, *see* TEX. GOV'T CODE ANN. § 25.0451 (West 2004), the probate court has jurisdiction over actions to which a trustee is a party or actions that involve an inter vivos trust, TEX. PROBATE CODE Ann. §§ 4G(1), (2) (West Supp. 2010). The probate court's jurisdiction is concurrent with the district court's jurisdiction in actions against a trustee or involving an inter vivos trust. *See id.* at §§ 4H(2), (3); *see also* TEX. PROP. CODE ANN. § 115.001(a) (West 2007). We note the probate court has jurisdiction over other matters entirely unrelated to this lawsuit.

---

[7] Section 25.0021 of the government code refers to the "Texas Probate Code." The Texas Probate Code has been recodified as the Texas Estates Code effective January 1, 2014. *See* Act of May 26, 2009, 81st Leg., R.S., ch. 680,§§1−12,,2009 Tex. Gen. Laws 1512, Act of May 19, 2011, 82nd Leg., R.S., ch. 823 , §§1−4,2011 Tex. Gen. Laws 1901, and Act of May 23, 2011, 82nd Leg., R.S., ch. 1338 , §§ 1−3, 2011 Tex. Gen. Laws 3884. References to the former probate code are to be construed as referring to the recodified estates code. *See* TEX. ESTATES CODE ANN. § 21.003(a) (West Pamph. 2013).

*See, e.g.,* TEX. PROBATE CODE ANN. § 4F (West Supp. 2010) (probate proceedings); *id*. at § 4H(1), (4) (actions involving personal representatives of estates); *id*. at § 4H(5), (6) (actions involving agents and powers of attorney).

Texas courts employ principles of statutory construction to discern the boundaries of statutory probate court jurisdiction. *See, e.g.*, *In re Guardianship of Gibbs*, 253 S.W.3d 866, 871 (Tex. App.—Fort Worth, pet. dism'd). A court's goal in construing a statute is to ascertain legislative intent by looking to the language of the statute itself. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). In construing statutes, courts may not enlarge the meaning of any word in a statute beyond its ordinary meaning. *See Sorokolit v. Rhodes*, 889 S.W.2d 239, 241 (Tex. 1994); TEX. GOV'T CODE ANN. § 311.011(a) (West 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."); *id.* § 312.002(a) (stating that words shall be given their ordinary meaning). Furthermore, a statutory provision will not be construed to lead to an absurd result if the provision is subject to another more reasonable interpretation. *Gibbs*, 253 S.W.3d at 872; *see also Battaglia v. Alexander*, 177 S.W.3d 893 (Tex. 2005).

By applying these principles to the language of the probate code, Texas courts have held that the legislative intent behind the probate court jurisdictional statutes was to confer a narrow grant of jurisdiction to statutory probate courts. *See Shell Cortez Pipeline Co. v. Shores*, 127 S.W.3d 286, 294 (Tex. App.—Fort Worth 2004, no pet.) (class claims against two oil companies that are the same as an inter vivos trust's claims does not bring a class action lawsuit within the subject matter jurisdiction of a statutory probate court); *Borden, Inc. v. Sharp*, 888 S.W.2d 614, 618 (Tex. App.—Austin 1994, writ denied). By not enlarging the meanings of relevant jurisdictional terms, Texas courts have concluded actions that merely implicate trusts or the operations of the trusts are not within the jurisdiction of probate courts. *See Gibbs*, 253 S.W.3d

at 872 (dismissing claims of restitution and breach of fiduciary duty brought in statutory probate court by one sibling beneficiary against other sibling beneficiaries of mother's trust because of court's lack of jurisdiction); *Schuchmann v. Schuchmann* 193 S.W.3d 598, 603 (Tex. App.—Fort Worth 2006, pet. denied) (sustaining appellant's plea to jurisdiction where a post-divorce action involving litigants only in their individual capacities and only implicating inter vivos trust was brought into probate court); *see also In re Stark*, 126 S.W.3d 635, 642 (Tex. App.—Beaumont 2004, orig. proceeding) (holding that tort claims do not fall within district court's jurisdiction for claims involving trusts and that enumerating types of trust proceedings in a jurisdictional statute indicates legislative intent to set forth the general nature of proceedings to be included in a probate court's jurisdiction). The court in *Gibbs* observed that broad construction of the jurisdictional statutes would lead courts to the absurd result that "every lawsuit touching on [probate matters properly within the court's jurisdiction], however slightly or tangentially, would come within the subject matter jurisdiction of the statutory probate courts, regardless of the subject matter." *Gibbs*, 253 S.W.3d at 872.

Here, none of Nicholson's remaining claims are "against a trustee," or "involve[e] an inter vivos trust . . . ." *See* TEX. PROBATE CODE ANN. §§ 4H(2), (3). All of Nicholson's remaining claims are general tort claims with no support in the pleadings or the record that her claims would affect the Trust. *See Gibbs*, 253 S.W.3d at 872; *In re Stark*, 126 S.W.3d at 642; *Schuchmann*, 193 S.W.3d at 603.[8] Accordingly, Nicholson's remaining claims are not within the subject matter jurisdiction of the probate court for which reason we have no choice but to dismiss the claims. *See Tex. Ass'n of Bus.,* 852 S.W.2d at 446.

---

[8] Furthermore, the absence of any underlying claim properly within a statutory probate court's jurisdiction cannot, therefore, give rise to pendent or ancillary jurisdiction over Nicholson's general tort claims. *See generally* TEX. PROB. CODE ANN. § 2 (Vernon 2003); *id*. at § 4A; *see, e.g., Loos v. Am. Bank*, 14-94-00750-CV, 1996 WL 75850 (Tex. App.—Houston [14th Dist.] Feb. 22, 1996, no writ) (not designated for publication) (probate court had jurisdiction over beneficiaries' tort claims against bank for return of estate property).

## V. CONCLUSION

Based on the record before us, we conclude that Stauffer as successor trustee of the Trust is not amenable to personal jurisdiction in Texas for Nicholson's claims in this lawsuit and the probate court erred in not making that determination. Without deciding whether or not Stauffer in his individual capacity is amenable to jurisdiction in Texas for Nicholson's remaining claims, we conclude the probate court does not have subject matter jurisdiction over Nicholson's remaining claims against Stauffer individually. We, therefore, reverse in part the trial court's order denying in part Stauffer's special appearance, and render judgment of dismissal of this case for lack of personal jurisdiction over Stauffer as successor trustee and lack of subject matter jurisdiction over the claims asserted against Stauffer individually.


131009F.P05

/David Evans/
DAVID EVANS
JUSTICE

–15–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TED STAUFFER, Appellant

No. 05-13-01009-CV     V.

JANE T. NICHOLSON, Appellee

On Appeal from the Collin County Probate Court, Collin County, Texas
Trial Court Cause No. PB1-0842-2012
Opinion delivered by Justice Evans, Justices O'Neill and Lang-Miers participating.

In accordance with this Court's opinion of this date, the trial court's order denying in part Ted Stauffer's special appearance is **REVERSED IN PART** and judgment is **RENDERED** dismissing this case for lack of personal jurisdiction over Stauffer as successor trustee and lack of subject matter jurisdiction over the claims asserted against Stauffer individually.

It is **ORDERED** that appellant Ted Stauffer recover his costs of this appeal from appellee Jane T. Nicholson.

Judgment entered this 30th day of July, 2014.