**Affirmed and Memorandum Opinion filed March 16, 2021.**



In The

# Fourteenth Court of Appeals

### NO. 14-18-00425-CV

## EDWARD ALEXANDER; ADAM JOHNSON; WAYNE THOMPSON, JR.; LILYNN CUTRER; AND KAREN AUCOIN; INDIVIDUALLY AND AS CO-TRUSTEES, Appellants

### V.

### PRESTON  MARSHALL, Appellee

**On Appeal from the Probate Court No. 4**
**Harris County, Texas**
**Trial Court Cause No. 365053-404**

## MEMORANDUM  OPINION

A Texas resident and trustee of a trust, which was settled in Texas and holds property in Texas for the benefit of only Texas beneficiaries, appointed five Louisiana residents as co-trustees.  The co-trustees knew that the primary beneficiary was a Texas resident.  The co-trustees traveled to Texas because of their appointments, conducted trust business jointly with the Texas trustee by telephone, and accepted payments for their services from the Texas trustee.  We

hold that these contacts are sufficient to establish specific personal jurisdiction over the co-trustees for a beneficiary's claims for breach of fiduciary duty and a declaratory judgment. Thus, the trial court did not err by denying the co-trustees' special appearance. The trial court's order is affirmed.

## I.    BACKGROUND

In 2006, E. Pierce Marshall settled two trusts (the Harrier and Falcon Trusts) and named his son, Preston Marshall, as a beneficiary of both trusts and Preston's children as beneficiaries of one trust. E. Pierce Marshall was a resident of Texas and signed the trust instruments in Texas. He named Elaine Marshall—his wife and Preston's mother—as the trustee of each trust.

The trust instruments give the trustee broad discretion to accumulate or distribute income and to distribute the trust principal. The instruments allow the trustee to designate co-trustees. The instruments provide that they are governed by the Louisiana Trust Code, and the trustee "shall apply to the 14th Judicial District Court for Calcasieu Parish, Louisiana, for instructions regarding any questions that might arise regarding administration of the Trust."

At all relevant times, Elaine, Preston, and his children have been Texas residents. All the bookkeeping for the trusts has been done in Texas. The trusts' bank accounts are in Texas. All of the trusts' assets are held and managed in Texas.

In December 2016, Elaine appointed the appellants as co-trustees of the trusts for a term that will continue for the duration of the trusts. Elaine signed appointment documents in Texas. The appellants are Louisiana residents. They each signed acceptance documents in Louisiana. All of the co-trustees testified that they knew, at or around the time of their appointments, that Preston was a

2

Texas resident. The appointment and acceptance documents describe a compensation scheme for the co-trustees that is based on the "gross trust receipts" of the trusts.

After their appointments, each of the co-trustees traveled to Texas to meet with Elaine.[1] One of the co-trustees testified that the purpose of the meeting was "to get to know her—meet her." Another co-trustee testified that they discussed Preston during the meeting in Texas. The co-trustees also had one or two conference calls with Elaine. During one of the calls, they discussed trust business and voted to not distribute any money to Preston. For their service as co-trustees during part of 2017, Elaine paid each of the co-trustees about $50,000.

In September 2017, Preston sued Elaine and the co-trustees in their individual and official capacities. He sought a declaratory judgment that the appointment of the co-trustees and their compensation scheme violated the terms of the trust instruments. He also alleged a claim against the co-trustees for aiding and abetting Elaine's breach of fiduciary duties by (1) agreeing to an unconscionable compensation scheme and (2) withholding trust distributions from Preston.

The co-trustees jointly filed a special appearance, and both sides presented evidence. The trial court signed an order denying the special appearance and issued findings of fact and conclusions of law. The co-trustees appeal.

## II. ANALYSIS

In two issues with several sub-issues, the co-trustees contend that the trial court erred by denying their special appearance and exercising specific personal jurisdiction over the co-trustees regarding Preston's claim for aiding and abetting

---

[1] Two of the co-trustees met with Elaine individually; three of the co-trustees met with Elaine together.

Elaine's breach of fiduciary duties. The co-trustees contend that (1) the special appearance must be reversed as to the co-trustees in their individual capacity; (2) some of the trial court's findings are not supported by the evidence; and (3) exercising personal jurisdiction over the co-trustees in Texas does not comport with due process.

## A.    Capacity

As an initial matter, the co-trustees contend that Preston failed to establish personal jurisdiction over them "in their individual capacities," and the trial court abused its discretion by "failing to differentiate its exercise of personal jurisdiction over the Co-Trustees in their various capacities."

The co-trustees rely on *Stauffer v. Nicholson*, in which the court of appeals held that the trial court abused its discretion by not granting a special appearance and dismissing all claims against the defendant in his capacity as a successor trustee. 438 S.W.3d 205, 212 (Tex. App.—Dallas 2014, no pet.). But in *Stauffer*, there was no evidence when, if ever, the defendant was a successor trustee of a trust, so there was no evidence that he was a trustee at the time of his alleged contacts with Texas. *Id.*

The co-trustees ask this court to extend *Stauffer* to hold that the trial court abused its discretion by not dismissing them in their *individual* capacities because of a lack of specific allegations or evidence that the co-trustees in this case were acting in their individual capacities. But this reasoning is faulty because a person is always liable for their own torts in an individual capacity, and Preston has alleged that the co-trustees aided and abetted a tort—breach of fiduciary duty. *See, e.g.*, *Yujie Ren v. ANU Res., LLC*, 502 S.W.3d 840, 849 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (upholding personal jurisdiction over defendant in

4

individual capacity despite claim that defendant acted only in official capacity because plaintiff alleged a tort, rather than contract, claim against the defendant).

The trial court did not err by not dismissing the co-trustees in their individual capacities.

## B. Findings of Fact

The co-trustees challenge the sufficiency of the evidence to support some of the trial court's factual findings. We review determinations of personal jurisdiction de novo. *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 885 (Tex. 2017). But when, as here, the trial court resolves questions of fact and issues findings of fact, we may review challenged findings for legal and factual sufficiency of the evidence. *BMC Software Belgium, N.V. v. Marchland*, 83 S.W.3d 789, 794 (Tex. 2002). Consistent with the co-trustees' request, we apply the familiar legal and factual sufficiency standards discussed in *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014), and *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). We review the challenged findings in turn.

### 1. *Finding #14* — "The Co-Trustees knew that Preston was a resident of Texas when they accepted their appointments."

Three of the co-trustees unambiguously testified that they knew Preston was a Texas resident before accepting their appointments. One of the co-trustees could not recall exactly when he learned that Preston was a Texas resident. But he knew that it was "shortly before or during or shortly after the time—the time that we were appointed as trustees." He was "not one hundred percent sure whether that was prior to becoming a trustee or after becoming a trustee," but he knew it was "in close proximity." The final trustee, a lawyer, testified that he could not recall exactly when he learned that Preston was a Texas resident, but he learned this fact

5

either at the time he was appointed or some point later. And, the co-trustee continued to act as a trustee knowing that Preston was a Texas resident.

The trial court, as the sole judge of the witnesses, could have resolved the inconsistencies in the latter two co-trustees' testimonies and found that they knew Preston was a Texas resident when they accepted their appointments. *See, e.g.*, *Salomon v. Lesay*, 369 S.W.3d 540, 549 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (noting that a fact finder may believe or disbelieve the testimony of a witness, in whole or in part, and may resolve any inconsistencies in a witness's testimony). Considering the evidence that the other three co-trustees were made aware of Preston's residence before accepting their appointments, the finding is rational when applied to the other two co-trustees. The evidence is legally and factually sufficient to support this finding.

2. *Finding #18* — **"The Trusts have always been and continue to be managed in Texas."**

   *Finding #20* — **"After July 2015, all accounting and administrative functions for the Trusts moved to Dallas, Texas."**

   *Finding #21* — **"All bookkeeping, accounting, and other administrative functions for the Trusts takes place in Dallas, Texas."**

The co-trustees challenge these findings by referring to evidence that the co-trustees performed their duties while in Louisiana. They also cite to one co-trustee's testimony that he received some documents regarding a trust from a Louisiana law firm. But this co-trustee testified that he did not know what books and records were kept in Louisiana. He also acknowledged that he was aware that the property of the trusts is "held and managed in Dallas, Texas."

These findings are supported by other evidence. Sheena Bonadona, the controller of the administrative service company that performs work for the trusts

6

at issue in this case, testified that she works out of an office in Dallas. She testified further:

Q. And as the controller for this administrative services company, what do you do for the various entities?

A. Accounting, tax returns, distribution calculations.

. . . .

Q. And you handle all the bookkeeping for [the trusts] in Dallas, right?

A. Yes.

. . . .

Q. You cut all the checks in Dallas for all these trusts, correct?

A. Yes.

. . . .

Q. All the administrative work for the [trusts] currently is being done in Dallas, right?

A. Yes.

Elaine testified similarly that Bonadona does the accounting for the trusts.

Crediting this testimony as we must, the evidence is legally and factually sufficient to support the trial court's findings that the trusts are managed in Texas and that all bookkeeping, accounting, and administrative functions take place in Texas.

3. *Finding #24 — "The Co-Trustees travelled to Dallas, Texas, to meet with Mrs. Marshall on Harrier and Falcon Trust business."*

The co-trustees challenge this finding only to the extent that the trip to Texas involved "business" of the trusts. They cite one co-trustee's testimony that she and Elaine did "not really" discuss trust matters:

Q. When you were in Dallas, Texas, did you discuss trust matters with Mrs. Marshall?

7

A. Not really. It was just to get to know her—meet her. We were only together like an hour or so.

Q. You didn't discuss any background of the trust or who formed it or anything else?

A. Not that I recall.

But this same co-trustee acknowledged that the purpose of the trip was to meet Elaine because they "would be working together as co-trustees." The co-trustee answered, "Yes," to the question, "And were you there because of your position with respect to the Harrier Trust?" Another co-trustee testified that she and Elaine discussed Preston during the meeting. The other co-trustees did not testify about the subject matter of their meetings.

The evidence shows that the visits to Texas occurred because of co-trustees' roles as co-trustees of the trusts, and therefore, concerned the "business" of the trusts. Thus, this finding is supported by legally and factually sufficient evidence.[2]

4. *Finding #23* — **"The Co-Trustees participated in managing the Trusts in Texas."**

We agree with the co-trustees that there is no evidence to support a finding that the co-trustees managed the trust "in Texas." Except for the sole trip to Texas to meet with Elaine after their appointments, the evidence shows that the co-trustees performed all of their functions related to the trusts outside of Texas.

However, even when we disregard this finding from our analysis of personal jurisdiction, discussed below, we nonetheless hold that the trial court properly denied the special appearance. Accordingly, we may not reverse the trial court's order based on this erroneous finding because the error did not probably cause the

---

[2] To the extent that the phrase "trust business" could be interpreted more broadly than what the evidence supports, we limit our consideration of this phrase by considering only the evidence discussed above.

rendition of an improper judgment or prevent appellant from presenting the case to this court. *See* Tex. R. App. P. 44.1(a); *see also Wheeling v. Wheeling*, 546 S.W.3d 216, 224 (Tex. App.—El Paso 2017, no pet.) (noting that even if there is insufficient evidence to support a finding of fact, the appellant must show that the error was harmful); *Merry Homes, Inc. v. Chi Hung Luu*, 312 S.W.3d 938, 951 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (affirming because even after disregarding challenged findings of fact, sufficient findings remained to support the trial court's judgment).

### 5. *Other "Irrelevant" Findings*

Finally, the co-trustees complain about "irrelevant" findings about other litigation between Preston and Elaine. Even if we disregard these challenged findings about other litigation, the co-trustees have not shown that any error in the trial court's making irrelevant findings probably caused the rendition of an improper judgment or prevented the co-trustees from presenting the case to this court. *See Merry Homes*, 312 S.W.3d at 951.

## C.   Due Process — Specific Personal Jurisdiction

The co-trustees contend that Preston failed to allege and prove that the co-trustees had sufficient minimum contacts with Texas, that they purposefully availed themselves of the privilege of conducting activities in Texas, that Preston's claim arise out of the co-trustees' contacts with Texas, and that exercising personal jurisdiction comports with traditional notions of fair play and substantial justice.

### 1. *Legal Principles*

Texas's exercise of personal jurisdiction over a nonresident defendant comports with due process if a nonresident defendant has "minimum contacts" with Texas and the exercise of jurisdiction does not offend traditional notions of

fair play and substantial justice. *M & F Worldwide*, 512 S.W.3d at 885. A defendant's minimum contacts with a forum, i.e., Texas, are established when the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. Id. Three principles govern this analysis:

> (1) only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or third person; (2) the defendant's acts must be purposeful and not random, isolated, or fortuitous; and (3) the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction such that it impliedly consents to suit there.

*Id.* (quotations omitted).

A nonresident defendant's minimum contacts will give rise to specific personal jurisdiction if the plaintiff's cause of action arises from or relates to those contacts. *Id.* at 886. For a nonresident defendant's contacts with Texas to support an exercise of specific jurisdiction, "there must be a substantial connection between those contacts and the operative facts of the litigation." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 156 (Tex. 2013) (quotation omitted). A nonresident's "directing a tort at Texas from afar is insufficient to confer specific jurisdiction." *Id.* at 157. The proper focus is on the extent of the defendant's activities in the forum, not the residence of the plaintiff. *Id.*

However, the absence of physical contacts with Texas does not defeat personal jurisdiction so long as the defendant's efforts are purposefully directed towards residents of Texas. *See Retamco Operating, Inc. v. Rep. Drilling Co.*, 278 S.W.3d 333, 339 (Tex. 2009) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). A defendant who reaches out beyond one state and creates continuing relationships and obligations with a citizen of another state is subject to the jurisdiction of the latter state in suits based on those activities. *Id.*

The exercise of personal jurisdiction must also comply with traditional notions of fair play and substantial justice. *Moncrief*, 414 S.W.3d at 154. If a nonresident has minimum contacts with the forum, rarely will the exercise of jurisdiction not comport with traditional notions of fair play and substantial justice. *Id.* at 154–55. We consider the following factors if appropriate: (1) the burden on the defendant; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental social policies. *Retamco*, 278 S.W.3d at 341.

### 2. Analysis

The most analogous Texas case cited by the parties is *Dugas Limited Partnership v. Dugas*, 341 S.W.3d 504 (Tex. App.—Fort Worth 2011, pet. granted, judgm't vacated w.r.m.). In that case, the Fort Worth Court of Appeals affirmed the denial of a plea to the jurisdiction based on specific personal jurisdiction over the trustees of a trust. *See id.* at 518. The settlor and trustees executed the trust in Florida. *Id.* at 508. The income beneficiary was a Texas resident when the trust was executed. *See id.* The trust made distributions to the beneficiary during his lifetime. *Id.* The distributions were transferred from a Tennessee LLC from its offices in Tennessee. *Id.* at 509. After the beneficiary's death, his child sued the trustees, i.e., nonresident defendants, in Texas for an accounting of the trust and alleged that the trustees breached fiduciary duties owed to her and failed to make sufficient distributions. *Id.*

The *Dugas* court upheld specific personal jurisdiction because the trustees purposefully created ongoing obligations between themselves and a Texas resident when they agreed to become trustees. *Id.* at 518. The court reasoned that the

11

trustees could have reasonably anticipated being haled into a Texas court to defend against claims arising out of their contacts with Texas. *Id.* Notably, the court held that another trust lacked sufficient minimum contacts with Texas to establish specific jurisdiction because at the time the trust was created, the beneficiary did not live in Texas. *See id.* at 518–19.

The co-trustees contend that this court should not follow *Dugas* because it is not binding and distinguishable based on the fact that the trusts in this case are governed by Louisiana law and require the trustees to submit issues regarding trust administration to a Louisiana court. *See M & F Worldwide*, 512 S.W.3d at 889 (rejecting personal jurisdiction in Texas, noting that a settlement agreement was governed by foreign law and contained a foreign forum-selection clause). But there are additional facts in this case that indicate the co-trustees purposefully availed themselves of the benefits of a Texas forum. While the trust in *Dugas* was settled in Florida and had administrative functions performed in Tennessee, here the trust was settled in Texas, has all of its property in Texas, and is run administratively in Texas. The former sole trustee, a Texan, appointed the co-trustees in Texas. Moreover, the co-trustees have received payments from Texas as a result of their appointments as co-trustees, and the appointments and future payments have an indefinite duration. These additional facts support a conclusion that the co-trustees have reached out beyond their state and created continuing relationships and obligations with citizens of another state. *See Dugas*, 341 S.W.3d at 517–18.

The co-trustees contend further that exercising jurisdiction in this case would be contrary to the First Court of Appeals' decision in *Loya v. Taylor*, in which the court affirmed the granting of a special appearance and dismissal of a foreign trust. *See Loya v Taylor*, No. 01-14-01014-CV, 2016 WL 6962312 (Tex.

12

App.—Houston [1st Dist.] Nov. 29, 2016, pet. denied) (mem. op.). In *Loya*, the nonresident defendant was a passive trust office that merely held shares of stock and distributed the shares to shareholders. *Id.* at *7. The trust office's business took place entirely in the Netherlands. *Id.* It did not employ anyone in Texas, own any property in Texas, maintain an office or address in Texas, or have any bank accounts in Texas. *Id.* Moreover, the plaintiff did not identify any specific act or omission that gave rise to her claims. *Id.* at *8. Unlike in *Loya*, the co-trustees are not merely passive distributors of stock income; they have broad discretionary powers to accumulate or distribute income and invade the principal, which is held and administered in Texas. They are paid for their services from Texas. Preston identifies the appointment of the co-trustees and their decision—made in conjunction with a Texas resident trustee—to not distribute income to Preston as the basis for his claims.

The co-trustees have not merely directed a tort at Texas, but they have reached out beyond Louisiana to create continuing relationships and obligations with citizens of Texas. Preston's claim for breach of fiduciary duty arises out of those relationships and obligations. *See Dugas*, 341 S.W.3d at 517–18.

Finally, the co-trustees contend that the exercise of personal jurisdiction over them does not comport with traditional notions of fair play and substantial justice. The co-trustees contend that E. Pierce Marshall, as settlor of the trust, intended for issues regarding trust administration to be addressed in Louisiana, not Texas. The co-trustees raise these arguments about fair play and substantial justice for the first time on appeal; they did not make these arguments in their special appearance or supporting brief. Accordingly, no error is preserved. *See* Tex. R. App. P. 33.1(a).

Even considering their arguments, however, this case does not present the rare circumstances for which exercising personal jurisdiction would offend

traditional notions of fair play and substantial justice. The co-trustees cite no analogous authority. The clause quoted above in Part I of this opinion, by its express terms, only applies to trustees and does not require beneficiaries to bring suit in Louisiana to challenge a breach of fiduciary duty. Moreover, although a forum-selection clause generally operates as consent to jurisdiction in one forum, it does not prove that the Constitution would allow no other forum. *See Nawracaj v. Genesis Software Sys., Inc.*, 524 S.W.3d 756, 756–57 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (jurisdiction in Texas comported with traditional notions of fair play and substantial justice despite the defendant-attorney's engagement agreement with his client that required binding arbitration to be conducted in Illinois).

Other factors support the trial court's conclusion that exercising jurisdiction over the co-trustees comports with traditional notions of fair play and substantial justice. The State of Texas has a substantial interest in ensuring that fiduciaries properly discharge their duties to Texas beneficiaries. *See id.* at 757; *see also Moncrief*, 414 S.W.3d at 156 (upholding jurisdiction when "no other jurisdiction has as significant an interest as Texas in resolving a claim for a tort committed in Texas against a Texas resident"). And, because the claims against Elaine will be litigated in a Texas court, it promotes judicial economy to litigate the claims as to all parties in one court. *See Moncrief*, 414 S.W.3d at 155.

In sum, the trial court did not err by denying the special appearance. The co-trustees' issues are overruled. The trial court's order is affirmed.


/s/     Ken Wise
        Justice

Panel consists of Justices Wise, Jewell, and Poissant.

14