In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00124-CV**
_____

**IN THE GUARDIANSHIP OF WILLIAM VERNON McKINZIE**

**On Appeal from the County Court**
**San Jacinto County, Texas**
**Trial Cause No. G2016-54**

## MEMORANDUM OPINION

Appellant Minnie Brown appeals from the trial court's order appointing appellee Donna Moore as permanent guardian of the ward, William Vernon McKinzie. In seven appellate issues, Brown asserts that (1) the trial court lacked jurisdiction, (2) the ward is mentally competent, and the trial court erred by (3) admitting testimony from a physician, (4) allowing Moore "to remain in the closed hearing as she had no application on file[,]" or, alternatively allowing Moore to amend her pleadings after trial, (5) appointing a permanent guardian because the least restrictive alternative was already in place, (6) appointing Moore as permanent

1

guardian because she was disqualified due to an alleged interest adverse to the ward, and (7) failing to disqualify Moore's counsel. We affirm the trial court's judgment.

BACKGROUND

The proceeding below began in 2016, when Christopher Andrew Johnson filed an application for temporary appointment of a guardian of the person "and/or" estate of William Vernon McKinzie (hereinafter "McKinzie"). Johnson asserted that he is McKinzie's "closest non-family, adult friend[.]" In the application, Johnson alleged that McKinzie was eighty-two years old, had been sued by his son, William S. McKinzie (hereinafter "Steve"), and was "unable to properly understand the allegations in the suit, the nature of the papers that were served on him, and the nature of the litigation process." According to Johnson, McKinzie lacked the ability to properly direct the litigation, make decisions regarding his participation in the litigation, was "confused about the status of his own property," and had been under a disability. The record reflects that McKinzie, through his attorney, Kerry Hagan, asserted a counterclaim in the suit Steve filed against him, alleging that McKinzie's signatures on two documents were obtained when McKinzie lacked capacity to execute the writings. McKinzie's counterclaims included fraud, duress, and breach of fiduciary duty, as well as a request for declaratory judgment that the writings at issue were invalid. The two writings at issue in McKinzie's counterclaim are both

2

"Gift Deeds" of land: one is a deed from McKinzie to Steve, and the other is a deed from McKinzie to Moore and McKinzie's other daughter, Melody Gordon.

Johnson sought appointment of a temporary guardian to assist McKinzie in the litigation and to assist McKinzie in evaluating past transactions undertaken when McKinzie allegedly suffered from incapacity. In addition, Johnson requested power to restrict Steve's access to McKinzie. Johnson specified that he did not seek to deprive McKinzie of the right to drive or the right to vote, and he pleaded that one of McKinzie's daughters (Melody Gordon) assists McKinzie with daily management of his financial affairs and requested that McKinzie's daughter continue to do so during the temporary guardianship. Hagan filed the petition on behalf of Johnson.

Johnson filed a motion to assign the proceeding to a statutory probate court judge, and he stated in the motion that the cause would involve a request to "continue into a permanent guardianship[.]" Upon hearing Johnson's motion, the San Jacinto County judge signed an order denying Johnson' request to transfer the case to a statutory probate judge. *See* Tex. Estates Code Ann. § 1022.003(b) ("If a party to a guardianship proceeding files a motion for the assignment of a statutory probate court judge to hear a contested matter in the proceeding . . ., the county judge shall grant the motion for assignment of a statutory probate court judge[.]").

In the response Johnson filed to McKinzie's request for disclosure, McKinzie asserted that "certain documents were obtained as a result of duress and in the

3

immediate wake of the death of [McKinzie's wife] at a time when [McKinzie] was unable to properly comprehend the nature of the transaction with his full faculties[.]"Johnson also filed a counterclaim, alleging, the documents at issue were invalid because the "signatures on two writings . . . were obtained when [McKinzie] did not have legal capacity to execute them and therefore were obtained as a result of fraud, duress[,] and through a breach of fiduciary duty[.]"

Johnson also sued Steve for declaratory judgment. In his declaratory judgment petition, Johnson alleged that Steve sued McKinzie seeking specific performance under the terms of a lease, that Steve obtained a ruling in his favor on that case, a temporary restraining order, even though McKinzie did not receive notice of the hearing, and that McKinzie lacked counsel at that time. As to that claim, Johnson also asked the San Jacinto County judge to transfer the case to a statutory probate court because his application to appoint a temporary guardian was being contested. Johnson also asked the court to declare two agreements McKinzie signed, allegedly at Steve's behest, within days after McKinzie's wife's died, are void and unenforceable given McKinzie's alleged lack of capacity and because Steve obtained the documents "as a result of fraud and duress[.]" The San Jacinto County judge subsequently signed an order granting Johnson's motion to refer the proceedings to a statutory probate court. After that, the presiding judge for the

4

statutory probate courts of Texas assigned the case to Judge Kathleen Stone, "a former Statutory Probate Judge," to hear "all matters" in the case.

In August 2016, Judge Stone signed an order appointing Johnson as the temporary guardian of McKinzie's estate and person. Judge Stone also ordered McKinzie to submit to a medical examination to determine whether he was disabled. Judge Stone's order provides that Dr. Mark Kunik is the physician who would perform the exam. Johnson also moved to be appointed the permanent guardian of McKinzie's person and estate. He alleged that McKinzie is partially incapacitated due to a cognitive disorder. Johnson's application also alleges that McKinzie possessed real property valued in excess of $500,000, but that McKinzie had been "apparently dispossessed per allegations made in this cause, but which [McKinzie] continues to claim as his own and for which he seeks return." In the application, Johnson pleaded that McKinzie had signed both a statutory durable power of attorney and a medical power of attorney naming Moore his agent. Johnson also asked Judge Stone to rule on the application. In February 2017, Judge Stone appointed an attorney ad litem "to represent . . . McKinzie, the proposed ward."

The same month, Brown contested Johnson's application for guardianship, and filed pleadings alleging that McKinzie "is not incapacitated and is not in need of a guardian of [his] person or estate." Brown asked that Judge Stone appoint her, noting that she is McKinzie's sister-in-law, and assuming the court ultimately

determined McKinzie needed a court-appointed guardian. Brown also alleged that Johnson, while acting as McKinzie's temporary guardian, had "delegated his duties[] without authority of this Court and signed a Medical and Statutory Durable Power of Attorney on behalf of [McKinzie] to name Donna Moore as his agent." Moreover, Brown asserted that "[a]ccording to a Court document filed on September 9, 2016[,] by [McKinzie]'s attorney, [McKinzie] is known to be completely mentally competent."[1] Brown contended that McKinzie is not incapacitated. In his responses to Brown's requests for disclosure, Johnson stated that "[t]he report of Dr. [James] Baker shows that [McKinzie] is partially incapacitated[.]" Johnson also filed a motion in limine, in which he asserted that in contesting Johnson's application to be appointed McKinzie's guardian, Brown was acting "as the alter ego of [Steve] and through his persuasion, influence[,] and inducement[,]" and he asked the trial court to determine whether Brown has an adverse interest in the outcome sufficient to disqualify her from serving as McKinzie's guardian.

The appellate record includes a copy of the transcript of a deposition given by Dr. James Baker, who McKinzie had seen for many years as his family physician.

---

[1]The record does not reflect that Hagan filed a document on September 6, 2016, but the record does show that the former attorney ad litem (who the Court eventually discharged at McKinzie's request) filed a rebuttal to McKinzie's response to her application for attorney ad litem fees and costs on that date. In said document, the previous attorney ad litem stated, "The Ward is now known to be completely mentally competent."

Baker testified that McKinzie has been his patient since around 2006. Baker also explained he was testifying as a fact witness, not an expert, as Johnson had not asked that he testify as an expert. When asked whether he was being deposed to render an opinion addressing McKinzie's competency, Baker testified, "I'm here to answer questions at this deposition; that's all." Baker agreed that determining competency is a field of expertise above a general medical practice, but he tied to McKinzie's memory problems, which Baker diagnosed in October 2007, as having resulted from a mild cognitive impairment.

In September 2016, Baker referred McKinzie to a specialist at Bricken & Associates to assess the severity of his memory loss. Baker also explained that in March 2017, he prescribed Aricept to McKinzie to treat him for his memory loss. According to Dr. Baker, Aricept helps slow memory loss in patients suffering from dementia. When asked why he had not prescribed Aricept until 2017, Baker testified: "Aricept's not indicated in mild memory loss. It's only indicated in mild stages of dementia." Baker also explained McKenzie came to his office on his own, without needing someone to drive him, when he saw him in February, March, and April of 2015. As to McKinzie's status in those visits, Baker described McKinzie as alert and oriented to person, place, and time.

When Baker saw McKinzie in April 2015, he noted that he suspected McKinzie was suffering from depression after losing his wife. Baker agreed that if

McKinzie had been suffering from dementia or Alzheimer's disease in 2015, he would have prescribed appropriate drugs or referred McKinzie to someone for an evaluation. Baker explained Bricken & Associates classified McKinzie as having a mild neurocognitive disorder. Baker felt that individuals with that diagnosis can still perform fairly well in some facets of their lives, but have trouble comprehending things that require careful study and consideration, such as business and managerial decisions.

Baker explained that in forming his opinions, he relied upon the Bricken and Associates' findings when he signed a letter expressing his opinion about whether McKinzie lacked capacity and needed a guardian. In the letter, which is titled "Guardianship Capacity Assessment Letter" and was attached as an exhibit to Baker's deposition, Baker concluded that McKinzie suffers from mild cognitive impairment due to a decline in memory, judgment, and decision-making ability, could only solve elementary problems, and McKinzie could not make decisions regarding business and managerial matters. The letter also contains Dr. Baker's opinion stating McKinzie is partially incapacitated and "[a] guardianship is recommended to monitor his care and guard his assets." When cross-examined in the deposition by Moore, who was representing herself, Baker testified that a person who had just lost a spouse of sixty-two years should not make life-changing

decisions involving matters like giving away all assets or property. The medical records that Dr. Baker relied on were also attached as an exhibit to his deposition.

The records Dr. Baker reviewed included a report authored by Dr. Kunik in August 2016 after Dr. Kunik examined McKinzie as authorized by the order signed by Judge Stone. Dr. Kunik's report states that he found McKinzie is not incapacitated and does not show evidence of a major mental health disorder. Kunik's report also states that "[a]s with most older adults, Mr. Mc[K]inzie's decision-making and cognitive functioning is likely to be worse under stressful circumstances and in circumstances where there is not ample time to make a decision."

In May 2018, Moore, without the benefit of an attorney, moved to intervene into the suit. In her application, she asked the court to appoint her as McKinzie's guardian because she is McKinzie's daughter. Moore's petition asserts that McKinzie is "partially incapacitated due to a cognitive disorder, and that same has been certified by an appropriate medical doctor or other health care professional able [to] attest to same, such assessment having been tendered to the court . . . and . . . admitted into evidence . . . at a hearing on May 14, 2018[,]" along with the deposition of Dr. James Baker. Moore pleaded that due to his incapacity, McKinzie cannot understand the allegations Steve had raised against him in the suit, the stakes at issue in the litigation, and she claimed McKinzie could not make decisions about the lawsuit without help. According to Moore, McKinzie "is confused about the status

9

of his own property due to a cognitive disorder" and had also suffered from a disability in the past. Moore asked the court to appoint a guardian to help McKinzie manage the issues Steve raised in the suit and to assist McKinzie "in obtaining the return of his own real property." Johnson's attorney, Kerry Hagan, testified in the case Steve filed against McKinzie that Moore and Johnson had executed waivers of any potential conflicts of interest regarding Hagan's representation of both Johnson and Moore. The waiver Hagan referred to is included in the appellate record.

The trial court heard the contest in May 2018. Hagan, as Moore's attorney, asked the trial court to appoint Moore as the guardian of McKinzie's person and estate. Several months later, Brown moved to disqualify Hagan, claiming that the Texas Rules of Disciplinary Conduct prohibit lawyers from representing opposing parties in the same litigation. On the same date, Moore notified the parties that Hagan was appearing in the proceedings as her attorney of record. Hagan and Moore memorialized the agreement confirming he would represent her in a letter dated October 2018, and the letter agreement is among the documents that appear in the appellate record.

The transcript of May 14, 2018, contest is included in the appellate record.[2] During the contest before Judge Stone, Steve testified that he sued McKinzie to

---

[2]A court reporter was not present at the trial, but an audio recording of the trial was transcribed and is included in the appellate record.

enforce a lease and in that proceeding, the trial court signed a temporary restraining order and a temporary injunction against McKinzie enforcing the lease. Steve testified that suit is still pending. Steve explained that he is objecting to the proposed guardianship, so he and Brown, who is his aunt, agreed Brown would appear in the probate proceeding and oppose Moore's application. Steve acknowledged that he paid the attorney who appeared in the proceeding on Brown's behalf. According to Steve, he has no doubts about McKinzie's capacity to manage his affairs.

Brown's attorney, Travis Owens, testified that when he initially met Brown, Steve was with her. Owens testified that Moore told him during a deposition that Brown was not competent and that Steve had influenced Brown's decision making in the case. Owens explained that Brown chose to withdraw her request to be appointed as McKinzie's guardian, but she did not withdraw her pleadings opposing Johnson's request to be appointed as McKinzie's temporary guardian.[3] During the hearing, Owens argued that the trial court lacked jurisdiction to do anything further in the proceeding because the County Court's jurisdiction expired as of October 3, 2016, sixty days after the County Judge signed an order appointing Johnson as McKinzie's temporary guardian because Johnson's request did not also ask the court to appoint a permanent guardian. Judge Stone overruled Owens's objection that the

---

[3]Hagan argued at trial that Brown is Steven's alter ego.

11

court no longer had jurisdiction to decide whether McKinzie needed a permanent guardian.

Moore's attorney, Hagan, asked the trial court to admit Dr. Baker's testimony in the contested hearing, which the parties had obtained in discovery by deposition. Brown's attorney, Owens, objected to Dr. Baker's testimony suggesting it was inadmissible because Baker testified that he was testifying as a fact witness and not an expert during the deposition. Owens suggested that Baker's testimony was inadmissible because he acknowledged that he had relied on a report from Bricken & Associates when he formed his opinions and admitted that he was not testifying as an expert. Based on these admissions, Owens argued that Dr. Baker's opinions were inadmissible, given that he acknowledged in his deposition that he had relied on a report he received from Bricken and Associates, which Owens suggested was inadmissible as hearsay, when he formed his opinion that McKinzie was incapacitated and needed a guardian. Judge Stone stated, "I'm not too sure that there has to be an expert who testifies in a guardianship proceeding."

Moore testified in the contested hearing that McKinzie was married to her mother for sixty-two years, and that McKinzie has three surviving children. Moore told the court she thought McKinzie needed a guardian because she believes he is partially incapacitated, given her experience that he is sometimes confused and forgetful. Moore explained that she and her sister, Melody, help McKinzie when he

12

must deal with his finances. Moore also testified that McKinzie's cognitive abilities have declined over time, explaining that at times she has seen him confused about whether he still owns certain real property. Additionally, Moore testified that McKinzie needs assistance in understanding the lawsuits that have been filed that affect his rights. According to Moore, the relationship between McKinzie and her brother, Steve, has been strained, and after her mother died, Steve "turned and . . . wanted the whole place." Moore explained that Steve "pestered [McKinzie] about buying the land outright." Moore testified that she thinks "[McKinzie] is scared of [Steve]." When asked about the possibility of Johnson becoming McKinzie's guardian, Moore testified she initially thought it was a good idea, but she decided later that she wanted to be the person who helped her father with his decisions. Moore testified, "even if I was appointed guardian, [Johnson] and I are still going to talk and everything. [Johnson is] my dad's best friend."

Brown's attorney, Hagans, moved to strike Moore's petition in intervention, arguing she had not complied with the Texas Estates Code and the motion to intervene lacked a verification. Judge Stone sustained the objection and struck Moore's intervention. When asked about how she knew Hagan, Moore testified she knew him because he had been McKinzie's attorney. She also explained that Hagan helped her with typing her *pro se* application seeking to intervene into the case.

13

Hagan asked the trial court to grant Moore leave to amend her application "and then reconsider her request that she be appointed guardian."

Judge Stone allowed Moore leave to amend her application, and the judge asked the attorney ad litem, Greg Magee, to assist Moore with getting her pleadings in order. Magee testified that McKinzie did not oppose having the court appoint a guardian to protect his interests. According to Magee, McKinzie told him "he would rather see his daughter [Moore] be his guardian because he would feel more comfortable . . . keeping it in the family."

On February 22, 2019, Judge Stone signed an order appointing Moore as the permanent guardian of McKinzie's person and estate. In the order, Judge Stone noted that Brown had abandoned her application to be appointed McKinzie's guardian, and that Brown's attorney had represented to the court that Brown's sole request concerned her contest to Johnson's request seeking to have the court appoint him as McKinzie's guardian. The trial court's order also states that the court would decide questions about attorney's fees in another order. On the same date, the trial court denying Brown's motion asking the court to disqualify Hagan "at this time."

Judge Stone's order appointing Moore as McKinzie's permanent guardian includes the following findings: (1) McKinzie is an incapacitated person; (2) McKinzie "lacks the capacity to do some, but not all, of the tasks necessary to care for himself or to manage his own property[,]" but McKinzie does have the right to

vote and to operate a motor vehicle; (3) McKinzie is "partially (and not totally) incapacitated due to a cognitive disorder – with the ability to care for himself and his property in some respects and the inability to care for himself and his property in other respects[;]" (4) McKinzie lacks capacity to handle business and managerial matters, invest, or make future financial plans, but retains the ability to pay for groceries, utilities, and vehicle expenses; (5) McKinzie lacks the ability to problem-solve or handle a bank account, but retains the ability to expend funds with a limit of $150.00; (6) McKinzie lacks ability to contract and incur obligations, to collect and file suit on claims, and to pay, compromise, and defend claims against him; (7) McKinzie lacks the ability to "understand the status of his own real property and claims related to his real property transactions in the past[;]" (8) McKinzie lacks the ability to properly understand the allegations in the lawsuit against his son, including "the nature of the litigation process as it relates to complex transactions that resulted in the execution of documents transferring his property away from himself in the historical past, and in the immediate wake of the death of [his] wife;" and (9) McKinzie lacks the ability to properly direct the litigation between him and Steve, "as well as the cause filed by and on behalf of [McKinzie] in this cause, and to make decisions regarding his own participation in the litigation process." Judge Stone also found that appointing a guardian is in McKinzie's best interest and alternatives to creating a guardianship are not feasible.

The attorneys for McKinzie and Brown both asked Judge Stone to file written findings of fact and conclusions of law. On April 5, 2019, Judge Stone signed written findings of fact and conclusions of law, and Brown appealed.

ISSUE ONE

In issue one, Brown argues that Judge Stone did not have jurisdiction over the case when, on February 22, 2019, the court appointed Moore to be McKinzie's permanent guardian. Specifically, Brown contends that under the Estates Code, Judge Stone lacked jurisdiction to act in the proceedings because a temporary guardianship cannot remain in effect for more than sixty days.

We disagree that Judge Stone lacked jurisdiction to appoint a guardian to assist McKinzie with his affairs. Brown relies on section 1251.151 of the Estates Code to support her argument, In pertinent part, section 1251.151 provides: "[A] temporary guardianship may not remain in effect for more than 60 days." Tex. Estates Code Ann. § 1251.151. However, the fact that a temporary guardianship may last only sixty days just means that after sixty days, the issues that relate to the temporary guardianship become moot. *In re Guardianship of Berry*, 105 S.W.3d 665, 666 (Tex. App.—Beaumont 2003, no pet.). The court does not lose jurisdiction over the case after sixty days, as section 1251.153 of the Estates Code provides that when an order granting a temporary guardianship expires, "the court immediately shall enter an order requiring the temporary guardian to deliver the estate remaining

16

in the temporary guardian's possession to the person legally entitled to possession of the estate." Tex. Estates Code Ann. § 1251.153(a). Further, upon proof that the guardian has delivered the remaining estate, the trial court shall discharge the temporary guardian and release the sureties on the temporary guardian's bond. *Id*. § 1251.153(b).

Moreover, the provisions of the Texas Estates Code apply to temporary guardianships "to the extent the provisions may be made applicable." *Id*. § 1251.102. Additionally, "[t]o the extent applicable and not inconsistent with other provisions of [the Texas Estates Code], the laws and rules governing estates of decedents apply to guardianships." *Id*. § 1001.002. Simply stated, "a probate court retains jurisdiction to settle an estate so long as a justiciable controversy remains." *In re Guardianship of Peterson*, Nos. 01-15-00567-CV, 01-15-00586-CV, 2016 WL 4487511, at *5 (Tex. App.—Houston [1st Dist.] Aug. 25, 2016, no pet.) (mem. op.).

The county court has subject-matter jurisdiction to hear all necessary guardianship matters that pertain to a guardianship. *See* Tex. Estates Code Ann. § 1022.002(a) ("In a county in which there is no statutory probate court or county court at law exercising original probate jurisdiction, the county court has original jurisdiction of guardianship proceedings."). In her brief, Brown did not cite any authorities to support her argument that the Legislature intended to divest a county court of its jurisdiction over guardianship proceedings when the order appointing a

17

temporary guardian for a ward for some reason expired before the court reached all other matters pertaining to the guardianship.[4] Here, Johnson's motion asking the County Judge to assign the guardianship proceeding to a statutory probate court asserts that the case involved issues that would lead to a request to appoint someone as Mckinzie's permanent guardian. Essentially, Brown asks this Court to analyze the dispute as though the case did not involve a guardianship proceeding and to apply the Rules of Civil Procedure without looking to the Estates Code to decide whether the court had jurisdiction to sign the permanent guardianship order. For the reasons explained, the Estates Code trumps the Rules of Civil Procedure with respect to whether the court below still had jurisdiction over the case. Because justiciable issues remained after the temporary guardianship expired, we conclude the trial court

---

[4]Citing *In re Guardianship of Gibbs*, 253 S.W.3d 866 (Tex. App.—Fort Worth 2008, pet dism'd), Brown contends that when a temporary guardianship is allowed to expire, the court loses subject-matter jurisdiction over "any subsequent proceedings[.]" However, the holding of *In re Guardianship of Gibbs* is distinguishable and is not as broad as Brown asserts. Rather, the appellants in *Gibbs* argued that the statutory probate court lacked subject-matter jurisdiction over claims against them for restitution and breach of fiduciary duty after the temporary guardianship expired. *Id*. at 869-70. Brown also contends that her proposition is supported by *Bauer v. Texas*, 341 F.3d 352 (5th Cir. 2003). However, *Bauer* involved a declaratory judgment action against the presiding judge of a Harris County Probate Court, in which the plaintiff, Bauer, sought a declaration that a statute in the Probate Code regarding the appointment of temporary guardians is unconstitutional. *Bauer*, 341 F.3d at 354-55. A temporary guardian was appointed for Bauer, but all pending state guardianship proceedings affecting Bauer were later dismissed *Id*. Nothing in *Bauer* supports the jurisdictional proposition that Brown cites it for in her brief.

18

had jurisdiction to decide whether McKinzie needed a permanent guardian to oversee his affairs. *See In re Guardianship of Peterson*, 2016 WL 4487511, at \*5; *see also* Tex. Estates Code Ann. § 1022.002(a). Accordingly, we overrule issue one.

## ISSUE TWO

In issue two, Brown argues that the trial court erred by appointing a permanent guardian because Dr. Kunik determined McKinzie "to be mentally competent." Brown contends that Kunik's report "is the only report filed in the Clerk's record." Brown ignores Dr. Baker's testimony, which the trial court considered in finding McKinzie needed a permanent guardian. She also ignores the lay testimony admitted during the May 2018 hearing, which also addressed whether McKinzie needed a permanent guardian. In addition, Brown fails to cite legal authority to support her argument; therefore, we find the argument was inadequately briefed. *See* Tex. R. App. P. 38.1(i) (providing that appellate briefs must contain appropriate citations to authorities). For the reasons explained above, we overrule issue two.

## ISSUE THREE

In issue three, Brown contends Judge Stone erred by considering Baker's testimony and his evaluation because Baker testified in his deposition "that he is not an expert." Brown maintains that Baker's letter report, which also states McKinzie is impaired, carries no weight because it "is expert testimony and is measured by the requisites of *E.I. du Pont de Nemours v. Robinson*, 923 S.W.2d 549 (Tex. 1995)[,]

19

which adopted the U.S. Supreme Court's rationale in *Daubert v. Merrell-Dow Pharmaceuticals*, 113 S. Ct. 2786 (1993)." According to Brown, Baker was not an expert, and his reliance upon documents from Bricken & Associates in forming his opinion is impermissible. If the trial court could not rely on Baker's testimony and report, Brown concludes the only remaining medical testimony before the court established that McKinzie did not need a guardian.

The Texas Estates Code requires medical evidence before allowing a court to appoint someone a guardian. Section 1101.103(a) of the Texas Estates Code provides that a court may not grant a guardianship for an incapacitated person "unless the applicant presents to the court a written letter or certificate from a physician licensed" in Texas that is dated not earlier than the 120th day before the date the application was filed, and is based upon an examination the physician performed not earlier than the 120th day before the application was filed. Tex. Estates Code Ann. § 1101.103(a); *see also id*. § 1101.104(1) (providing that if intellectual disability is the basis of the proposed ward's alleged incapacity, the applicant must file a written letter or certificate that complies with sections 1101.103(a) and (b)).

Brown's argument suggests that because Baker testified he was not testifying as an expert, since no one had retained him for that purpose, his testimony is inadmissible even if his testimony reflects he expressed opinions that a court could

have otherwise relied upon in a trial. Brown also suggests that because Baker testified that he formed his opinion based partly on the report from Bricken & Associates about the memory problems McKinzie was having, the trial court could not properly consider or rely on the opinion Baker expressed when he testified or the letter that he signed assessing McKinzie's lack of capacity. Again, Brown cites no authority in her brief to support her argument.

It is the province of the trial judge, not the witness, to determine whether the witness can testify as an expert. Under the Texas Rules of Evidence, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Tex. R. Evid. 702. "An expert may base an opinion on facts or data in the case that the expert has been made aware of, reviewed, or personally observed." Tex. R. Evid. 703. Whether a witness is qualified as an expert is within the trial court's discretion, and an appellate court will not reverse absent a clear abuse of discretion. *Broders v. Heise*, 924 S.W.2d 148, 151 (Tex. 1996). A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

As discussed above, Baker testified that he is a licensed family physician. His testimony shows he has cared for McKinzie as McKinzie's family physician since approximately 2006. While it's true that Baker acknowledged that Johnson did not ask him to testify as an expert, Baker also explained he was simply there to answer the questions posed to him in his deposition. Baker also testified that determining whether a person is competent generally involves a field of expertise beyond his general medical practice. Yet, Judge Stone still could have found that Baker has more training than a layman would have in deciding whether a person was suffering from an incapacity that resulted from a decline in the person's cognitive function, given his training and the period in which he had seen and treated McKinzie.

As discussed above, section 1101.103(a) simply requires that the applicant for guardianship present a letter from a licensed physician, and section (b) provides that the letter must contain certain findings. Tex. Estates Code Ann. § 1101.103(a), (b). Baker testified that, in October 20007, he diagnosed McKinzie with suffering from a mild cognitive impairment, and he explained that in September 2016, he referred McKinzie to a specialist to assess whether McKinzie was suffering from memory loss. Baker explained that he relied on the Bricken and Associates report when he formulated his opinion that McKinzie needed a guardian to assist him in making decisions about business and in managing his affairs. Baker tied McKinzie's need for a guardian to McKinzie's declining memory, and the report from Bricken and

Associates merely offers more support for Baker's clinical impression, based on his examination of McKinzie over the years, that McKinzie suffered from a mild neurocognitive disorder. Baker's testimony reflects his opinion that McKinzie is partially incapacitated. He also explained when he testified the reasons he thought a guardianship would be appropriate given McKinzie's condition.

We cannot say that Judge Stone abused her discretion when she chose to rely on the testimony of the proposed ward's treating family physician. *See generally* Tex. Estates Code Ann. § 1101.103; Tex. R. Evid. 702, 703; *see also generally Downer*, 701 S.W.2d at 241-42. We overrule issue three.

## ISSUE FOUR

In issue four, Brown asserts Judge Stone erred by allowing Moore to remain in the hearing or, alternatively, the trial court erred by permitting Moore to amend her pleadings after the trial. *See* Tex. Estates Code Ann. § 1101.051(c) (providing that "[t]he court may close the hearing at the request of the proposed ward or the proposed ward's counsel"). Brown fails to cite any legal authorities to support her argument claiming Judge Stone committed reversible error by allowing Moore to be present during the hearing. We find the argument inadequately briefed. *See* Tex. R. App. P. 38.1(i).

Next, we turn to the whether the trial court erred by permitting Moore to amend her pleadings after trial. A party may amend its pleadings within seven days

23

of the date of trial or thereafter if the party obtains leave of court to do so. Tex. R. Civ. P. 63. The trial court "shall" grant leave to amend "unless there is a showing that such filing will operate as a surprise to the opposite party[.]" *Id.* We review a trial court's decision granting leave to file amended pleadings after trial for an abuse of discretion. *See Greenhalgh v. Serv. Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex. 1990).

Brown asserts that an amendment of a party's pleadings is facially prejudicial if the amended pleading asserts a new substantive matter that reshapes the nature of the trial, the opposing party could not have anticipated the new matter, and the amendment would detrimentally affect the opposing party's presentation of its case. *See Halmos v. Bombardier Aerospace Corp.*, 314 S.W.3d 606, 623 (Tex. App.— Dallas 2010, no pet.). Brown fails to demonstrate that she can satisfy the criteria she relies on in *Halmos* or the requirement in Rule 63.

As previously discussed, Moore filed a *pro se* petition in intervention, in which she asked the court to appoint her as McKinzie's guardian in lieu of appointing Johnson. Moore then waived citation and further notices concerning the guardianship proceeding after filing her intervention, but the record does not indicate she withdrew her petition. The trial was underway when Judge Stone sustained Brown's objection and struck Moore's intervention. Under the circumstances, Moore's post-trial amendment to correct the deficiencies that existed in her original

24

intervention did not operate as a surprise, nor did Moore's amended petition assert a new matter that reshaped the nature of the trial, raise a new matter that Brown could not have reasonably anticipated, or detrimentally affect the manner Brown chose to present her case. *See* Tex. R. Civ. P. 63; *Halmos*, 314 S.W.3d at 623. Accordingly, we hold Judge Stone did not abuse her discretion when she permitted Moore to amend her pleadings after the trial. *See Greenhalgh*, 787 S.W.2d at 939; *see also* Tex. R. Civ. P. 63; *Halmos*, 314 S.W.3d at 623. We overrule issue four.

## ISSUE FIVE

In issue five, Brown argues that the trial court erred by appointing a permanent guardian because the least restrictive alternative to guardianship "is already in place." *See* Tex. Estates Code Ann. § 1101.101(a)(1)(D) (requiring that before appointing a guardian, the trial court must find by clear and convincing evidence that "alternatives to guardianship that would avoid the need for the appointment of a guardian have been considered and determined not to be feasible[.]") Specifically, Brown maintains that Moore and her sister have helped McKinzie manage his bank account, that Moore has a power of attorney, and that these powers are sufficient. Brown argues that McKinzie's incapacity was not established without evidence of recurring acts or occurrences in the preceding six months as opposed to the isolated instances of negligence or bad judgment, as described during the trial testimony. *See id.* § 1101.102.

25

In a bench trial, findings of fact have the same force and dignity as a jury's verdict. *See Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). In reviewing the legal sufficiency of the evidence, we review the evidence in the light most favorable to the trial court's findings, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In reviewing the factual sufficiency of the evidence, we weigh all the evidence, and we will set aside the judgment only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id*. at 826; *see also Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

In a bench trial, the trial court acts as the factfinder, is the sole judge of the weight and credibility of the evidence, is entitled to resolve any conflicts in the evidence, and may choose which testimony and witnesses to believe. *City of Keller*, 168 S.W.3d at 819; *see also Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). The factfinder may choose to believe one witness over another, and we may not substitute our judgment for that of the factfinder. *Jackson*, 116 S.W.3d at 761. In this case, Judge Stone provided the parties with written findings.

> When findings of fact are filed by the trial court[,] they shall form the basis of the judgment upon all grounds of recovery and of defense embraced therein. The judgment may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no element

26

of which has been included in the findings of fact; but when one or more elements thereof have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment.

Tex. R. Civ. P. 299.

Although Brown does not explicitly challenge the legal or factual sufficiency of the evidence, she appears to be arguing that insufficient evidence supports the trial court's implied finding that a less restrictive alternative to guardianship did not exist. However, Brown does not discuss or even mention Judge Stone's written findings. At the outset, we note the Judge Stone concluded that McKinzie is partially incapacitated; that is she did not find him to be totally incapacitated.

Among Judge Stone's written findings, she found, *inter alia*, that McKinzie lacked "the capacity to do some, but not all, of the tasks necessary to care for himself or to manage his own property[.]" The evidence admitted in the trial included the deposition testimony of Baker, the Guardianship Capacity Assessment Letter that Baker prepared, and the report from Bricken & Associates. In his Guardianship Capacity Assessment Letter, Baker expressed his opinion that McKinzie is suffering from moderate cognitive impairment due to declining memory, judgment, and decision making. He also stated that he thought McKinzie could not adequately manage his business and managerial affairs. Baker's letter report states that he "do[es] not anticipate any improvement in [McKinzie's] mental . . . capacity." The November 2016 evaluation by Bricken & Associates states that McKinzie's

"memory and cognitive abilities are best represented by the classification, Mild Neurocognitive Disorder that may be due to Alzheimer's etiology . . . . Mr. McKinzie is reported to exhibit progressive declines in memory and higher-level cognitive abilities over the past 1 ½ to 2 years . . ., and to have commensurate declines in higher-level tasks of daily living requiring additional supports." The Bricken & Associates report also states that McKinzie's "difficulties in daily living activities requiring higher cognitive processes reflect a 'moderate' or higher level of impairment."

We conclude the evidence is legally and factually sufficient to support Judge Stone's written findings and her order appointing Moore to be McKinzie's permanent guardian. We further conclude that, had Judge Stone been asked to make further findings, she would have found that the alternative to permanent guardianship were not feasible based on the evidence admitted in the trial. *See City of Keller*, 168 S.W.3d at 827; *Jackson*, 116 S.W.3d at 761; *Cain*, 709 S.W.2d at 176; *see also* Tex. R. Civ. P. 299. Accordingly, we overrule issue five.

ISSUE SIX

In issue six, Brown contends the trial court erred by appointing Moore as McKinzie's permanent guardian because she "is disqualified as a person with an interest adverse" to McKinzie. Specifically, Brown maintains that Moore is disqualified because McKinzie deeded some property to her. However, Brown cites

28

no authorities to support her argument that evidence that the ward had transferred real property to a proposed guardian, without more, establishes that the guardian has an interest that is adverse to the ward. Moreover, nothing in the record shows that Moore pursued any claims against McKinzie based upon any deeds. *See* Tex. R. App. P. 38.1(i) (requiring briefs to contain appropriate citations to the record and authorities). Accordingly, we overrule issue six.

## ISSUE SEVEN

In issue seven, Brown argues that the trial court erred by denying her motion to disqualify Hagan as Moore's attorney. Specifically, Brown asserts that Moore and Johnson are opposing parties because both sought to be McKinzie's guardian, and it is therefore impermissible under the rules of ethics for Hagan to represent both Moore and Johnson. Brown does not cite any legal authorities supporting her argument that two persons who apply to be named permanent guardian constitute opposing parties. *See* Tex. R. App. P. 38.1(i) Furthermore, the record reflects that Brown did not move to disqualify Hagan until November 14, 2018, which was six months after the trial. *See* Tex. R. App. P. 33.1(a). For all these reasons, we overrule issue seven. Having overruled each of Brown's issues, we affirm the trial court's judgment appointing Moore as McKinzie's permanent guardian.

AFFIRMED.

_____

STEVE McKEITHEN
Chief Justice

Submitted on March 20, 2020
Opinion Delivered December 30, 2020

Before McKeithen, C.J., Kreger and Horton, JJ.